BERLIN BYRD, *By etc. v.* C. V. RECTOR *et al.*

(No. 7036)

Submitted March 24, 1932. Decided April 19, 1932.

*Thomas J. Davis, A. F. McCue* and *Grover F. Hedges,* for plaintiff in error.

*S. A. Powell* and *L. A. Henderson,* for defendants in error.

MAXWELL, JUDGE:

Plaintiff, an infant who sues by next friend, instituted this action February 4, 1931, in the circuit court of Ritchie County against C. V. Rector and O. L. Meddles for $20,000 damages for personal injury. An attachment was issued on the ground that the defendants were non-residents of the state of West Virginia and, at the time of the institution of the suit, had property and effects in said county. On the 5th of February, 1931, the sheriff of Ritchie County executed the attachment by making levy on certain personal property of the defendants in said county.

Upon suggestion of the plaintiff that the state road commission of West Virginia and the First National Bank of Spencer were severally indebted to the defendants, copies of the said attachment were levied upon the former on the 9th of February and upon the latter on the 11th. On the 28th of February, proper notice having been given, the defendants made special appearance by counsel in the circuit court of Ritchie County and moved for transfer of the case to the District Court of the United States for the Northern District of West Virginia on the ground of diversity of citizenship of parties plaintiff and defendant. Action on this motion was continued because of alleged deficiency of the bond then tendered by the defendants.

At March Rules the process which had been issued against the defendants at the time of the institution of the suit was returned by the sheriff unexecuted because the defendants were not found within the county. The endorsement of "not found in my bailiwick" had been made by the sheriff on the summons on the 5th day of February, being the same

day on which the attachment was levied. On the 25th of March, the matter came on again to be heard on the motion for transfer to the federal court. The motion was overruled. On the same day, counsel for defendants also appeared specially and moved the court to require the plaintiff to give bond in the penalty of $40,000 being double the amount laid in the declaration. This motion was overruled at a subsequent date.

The court's order of the 25th of March, carries this further recital: "And upon motion of the defendants, by their said attorney, leave is given them, or either of them, to file herein within thirty days if this court be then in session, and if not, then in the office of the Clerk of this court, any additional plea or pleas which may be proper in the premises relating to said attachment, or otherwise." It also further appears from said order that on said date counsel for the plaintiff admitted in open court that the defendant, O. L. Meddles, is a resident of the state of West Virginia.

The circuit court having declined to quash the attachment, or to transfer the suit to the federal court, or to require the plaintiff to give bond, this writ of error was obtained by defendant Rector, and First National Bank of Spencer, garnishee.

The first point of error in logical order is predicated on the proposition that the original process became *functus officio* at March Rules upon its being returned by the sheriff unexecuted; that the only manner in which the action could then be kept alive was by the issuance at March Rules of alias process or order of publication; that such course not having been taken, the action then lost its vitality beyond possibility of resuscitation, and that consequently all subsequent proceedings were abortive.

In support of this proposition, reliance is had upon the principle recognized in *Roach* v. *Wallins Creek Collieries Co.*, 111 W. Va. 1, 160 S. E. 860, wherein there is a quotation from Burks Pleading & Practice (1st Ed.), sec. 188, in part as follows: "It would seem that process to commence a suit must be continuous until a return of 'executed', is obtained, and therefore that the alias or pluries summons can only

issue at the rules at which the previous process was returned unexecuted; that a failure then to issue the alias or pluries would cause a hiatus in the action and operate a discontinuance; and that to hold otherwise would be to permit a plaintiff to continue his case indefinitely at the rules and save the running of the statute of limitations for any length of time he chose." That observation of the author was apropos of the Virginia statute authorizing the issuance of an alias writ. We have a like statute. Code 1931, 56-3-21. Now, while the soundness of this proposition is unquestioned where the action is *in personam* and the jurisdiction of the court depends entirely upon personal service, it does not follow that the rule must be applied in a case where the court's jurisdiction does not depend solely upon its having the person of the defendant before it.

This is not *res integra* in this jurisdiction. The case of *Norman* v. *Willis*, 88 W. Va. 76, 106 S. E. 252, is an adjudication of the identical proposition. The suit was brought in the circuit court of Roane County. On review of the case, Judge Lively speaking for this court, said: "The attachment issued on March 15, 1919, was levied that day on property of defendant in the county of Roane. This gave the court jurisdiction. If no property could have been found, and the summons was returned on the return day showing that the defendant was a non-resident and could not be found, no service on him, then the suit would have abated. Under sec. 8 of ch. 125 of the Code, a suit against a non-resident cannot be maintained simply on the ground that the cause of action arose in the county. There must be some other ground, and if it appears that the non-resident defendant has property or debts in the county, then that fact is sufficient to maintain the jurisdiction." It was held that the attachment having been levied prior to the return day of the summons, the suit did not abate on the return day though the return disclosed that the defendant was not found in the county. Of course, in such cases, in the absence of voluntary appearance, there must be an order of publication against defendants as to whom there could not be personal

service of process, *Haymond* v. *Camden,* 22 W. Va. 180, but failure to issue the same immediately upon the sheriff's return of "not found" does not create a hiatus devitalizing the suit where property of the non-resident has been found in the county and subjected, to levy of attachment. As to the resident defendant, Meddles, who was proceeded against as a non-resident, the fact that he was a non-resident did not appear in the case until March 25, 1931. On that same day, as will hereinafter be demonstrated, he voluntarily submitted to the jurisdiction of the court by making a general appearance in the case. Though the summons was returned "not found" at March Rules, there was not a hiatus as to him between March Rules and March 25th, because his position during that period was as a non-resident and the attachment preserved the vitality of the case as to him as well as his co-denfendant. So, the first point relied on by the defendants is not well taken.

The trial court committed no error in declining to transfer the action to the federal court, the rule being that where one of two or more defendants is a citizen of the same state as the plaintiff, the suit, unless severable as to the defendants, cannot be removed on the ground of diversity of citizenship. *Clarke & Co.* v. *Figgins,* 27 W. Va. 663; *Kennedy* v. *Ehlen,* 31 W. Va. 540, 8 S. E. 398; 54 Corpus Juris, pp. 268 and 289; 23 Ruling Case Law, p. 679; *Alabama G. S. R. Co.* v. *Thompson,* 200 U. S. 206, 50 L. Ed. 441; Rose's Fed. Pro. (4th Ed.), sec. 421.

Consideration must now be given to the proposition of the defendants that the trial court should have required the plaintiff to execute bond in the penalty of at least double the amount of the claim sworn to in the attachment affidavit. Such bond is required by the statute where a plaintiff desires to have the sheriff take possession of the property of the defendant upon which levy is made under the attachment. Code 1931, 38-7-8. It is urged on behalf of defendants that it is the true meaning of that section that such bond should be required where, as in this case, a defendant is kept out of possession of his property by reason of a garnishment

proceeding. It is urged that if this section properly construed does not require a bond to be given in such instances, then section 15 of the same article and chapter, authorizing garnishment upon suggestion, is unconstitutional and void as violative of the due process clauses of the federal and state constitutions.

We think the answer to these propositions is that a defendant is not deprived of his property by reason of the levy of a copy of the attachment upon a person who is indebted to him or who has effects in his custody belonging to the defendant. The most that such procedure does is to deprive defendant of the possession of his property temporarily by establishing a lien thereon. Whether the defendant shall be deprived of such property must depend of course upon the plaintiff's subsequent ability to obtain a judgment *in personam* or *in rem* on his claim against the defendant. If, after having full opportunity to be heard in defense of such claim, a judgment is rendered thereon against the defendant or his property, there has been no lack of due process. In the meantime there has been no deprivation of property. The attachment, *quasi rem* in nature, has operated only to detain the property temporarily, to await final judgment on the merit's of plaintiff's claim. No constitutional right is impaired. *McInnes* v. *McKay,* (Me.) 141 Atl. 699. Until such judgment is obtained, the defendant's property in the hands of a garnishee is immune from the plaintiff's grasp. Under no circumstances could it be converted into cash and applied on the plaintiff's demand prior to final adjudication of the merits of the controversy between plaintiff and defendant. Now, if pending such determination, the defendant is inconvenienced because he is temporarily deprived of the possession and use of his property in the hands of the garnishee, the defendant may acquire possession by giving bond, for which provision is made by Official Code, 38-7-20. We find no error under this point.

It appears from the attachment affidavit that the defendants were road contractors engaged in the construction of a state road in Ritchie County.

The manner in which the plaintiff was injured is thus averred in the affidavit for attachment:

"* * * in the execution of said work the said contractors used large quantities of dynamite and other explosives and for the purpose of exploding the same used what is known as electric caps and that the said contractors and their servants and employees carelessly and negligently stored said explosives on or near the right of way of said highway and on or near the public school grounds known as the Oak Dale School and carelessly and negligently exposed said explosives and caps to the children attending said school and to children and adults passing along and over said highway and while said explosives and caps were so carelessly and negligently exposed as aforesaid, one Buster Goff, aged 14 years, and one Lynn Clayton, aged 13 years, procured a large quantity of said electric caps and gave the same to the said Berlin Byrd, aged 11 years, infant son of affiant, as aforesaid, and the said Berlin Byrd, not knowing of the dangerous character of the said caps, in playing with the same on, to-wit, the ........ day of October, 1930, in said County of Ritchie, caused one of them to explode and the force of said explosion injured, maimed, bruised, and wounded the said Berlin Byrd * * *."

The defendants insist that the affidavit should have been quashed because they say that it discloses that the injury to plaintiff "was brought about by the intervention of two independent third parties, the independent acts of whom completely intervened between the defendants' negligence and the injury sustained by the infant." We are of opinion that the facts alleged in the affidavit do not present a situation which can properly be analyzed in the manner thus suggested by the defendants.

The alleged act of negligence of defendants in leaving explosive caps exposed in the vicinity of a school and highway where they were readily accessible to children was of a nature to produce injury, and the intervention of children carrying away some of the caps and giving them to another child who was injured thereby was not an intervention by

an independent agency, within the meaning of the law, so as to relieve the defendants of responsibility, but was in reality only a link in the chain of events naturally to be anticipated. ''With reference to dangerous articles negligently left where they are likely to be found by children, in the majority of the cases, the courts do not treat their acts as intervening causes, but hold that the result must have been, or at least ought to have been, foreseen, and consequently the defendant is held liable under the general rule that a negligent person is responsible for all of the consequences of his negligence which ought reasonably to have been foreseen." 22 Ruling Case Law, page 141. The plaintiff's injury followed proximately from the negligent act of which complaint is made. Of course, where an injury has resulted from an act not wrongful, but only as the result of an intervening cause, the latter and not the former will be deemed the proximate cause of the injury, and the person responsible for the original act will not be liable for damages. This principle is thus illustrated: ''An owner of a city lot who piles lumber thereon, to be used in the construction of houses or other structures, is not.liable to one injured while upon the sidewalk abutting such property because children playing upon such lumber displace one of the pieces thereof and cause it to roll against such pedestrian upon the sidewalk. In such case the injury is proximately caused by the action of the children, and does not proceed from any negligence upon the part of the owner of the property." *Martino* v. *Rotondi,* 91 W. Va. 482, pt. 2 syl., 113 S. E. 760. There is thus vivified the distinction between inherently dangerous and those which do not possess characteristics which are ordinarily harmful.

The following cases are illustrative of the principle which fixes liability for injury consequent upon the negligent exposing of inherently dangerous articles: *Harriman* v. *Pittsburgh etc. Ry.,* (Ohio) 24 N. E. 658; *Colebank* v. *Coal & Coke Co.,* 106 W. Va. 402, 145 S. E. 748; *Wellman* v. *Fordson Coal Co.,* 105 W. Va. 463, 143 S. E. 160. Texts as follows: Jaggard on Torts, Vol. I, p. 72-3, and Pollock, The Law of Torts, (13th Ed.), p. 485.

The remaining question is whether there was a general appearance by counsel for the defendant. The appearance of counsel, above recited, for the purpose of moving the transfer of the case to the federal court was carefully guarded and circumscribed as and for a special appearance. But can an appearance for that purpose be deemed special however careful counsel may have been to have the record show that it was only special? The exact point, that is, whether appearance for the purpose of moving transfer of the case to the federal court may be a special appearance or whether of necessity it is a general appearance, seems not to have been adjudicated in this jurisdiction. Does the very broad general rule which obtains in this commonwealth, limiting special appearances within narrow scope, apply to an appearance for the purpose of moving a transfer to the federal jurisdiction? The rule referred to is this: ''Any appearance, except to object to the jurisdiction,—as, for instance, to take advantage of defect in process or return,—is a general appearance, not special, and will dispense with its service.'' *Frank* v. *Zeigler,* 46 W. Va. 614, 618, 33 S. E. 761. This rule was recognized and applied early in the history of this commonwealth. *Bank of the Valley* v. *Bank of Berkeley,* 3 W. Va. 386. Rule reiterated: *Kephart* v. *Railroad Co.,* 15 W. Va. 609; *Burlew* v. *Quarrier,* 16 W. Va. 108; *Shepherd* v. *Brown,* 30 W. Va. 13, 3 S. E. 186; *Layne* v. *Railroad Co.,* 35 W. Va. 438, 14 S. E. 123.

Whether this broad and general rule should be deemed applicable to a motion such as is under consideration ought to be considered in the light of the holdings of other states and of the federal courts with reference to the specific matter. In Indiana: ''A special appearance in the state court, for the purpose of making application therein for removal of the cause to the United States court, does not constitute a submission to the jurisdiction of the state court for any other purpose.'' *Paul* v. *Railroad Co.,* (Ind.) 69 N. E. 1024. We find a Michigan case holding the same. *Schwab* v. *Mabley,* 47 Mich. 512. ''It is now the well settled doctrine of the federal courts that the filing of a petition for the removal of a cause from a state to a federal court, and the proceed-

ings on such petition, are not the equivalent of a general appearance and do not prevent defendant from thereafter appearing in the federal court and objecting to the jurisdiction over his person by reason of defect or irregularity in the process or the service thereof; the proceedings are a special appearance only for the purpose of a removal, whether expressly so stated or not. This is likewise the doctrine of many state courts." 4 Corpus Juris, page 1343. The federal rule as thus stated is made clear in *Wabash Western Ry. Co.* v. *Brow,* 164 U. S. 271. "The petition for removal is not an appearance such as to constitute a waiver of objection to the jurisdiction by reason of insufficiency of the service of process; but it is a waiver of the privilege of being sued in a particular federal district." 18 Ency. Pl. & Pr., page 328. "A petition for the removal of a cause from a state court to the federal court does not constitute a general appearance in the action." 4 Am. & Eng. Ency. Law & Pr., page 1000. Inasmuch as a motion for the transfer of a case does not in any sense recognize or admit the state court's jurisdiction of either the person appearing or the subject matter of the suit, we are of opinion that the rule recognized by the authorities cited is the rule of reason, and should be the rule of this jurisdiction. We therefore hold that the defendant by presenting a petition for removal to the federal court did not make a general appearance in the circuit court of Ritchie County.

But when, on the 25th of March, after the court had overruled the motion for transfer to the federal court, counsel for defendants moved for and obtained leave to file any plea or pleas which they might deem proper relating to the attachment, or otherwise, the appearance became general. The defendants thereby submitted themeselves to the jurisdiction of the court. The obtaining of such leave on motion is a clear recognition of the jurisdiction of the court over the persons of the defendants taking such leave. As illustrative, see *Danser* v. *Mallonee,* 77 W. Va. 26, 86 S. E. 895, wherein after the court's action on defendant's motion made under special appearance to quash an attachment, the defendant moved to dismiss the case from the docket, the latter motion

' was held to constitute a general appearance. The general rule (above quoted) of this jurisdiction clearly applies to such situation.

On the 18th of May, 1931, the First National Bank of Spencer demurred to the attachment affidavit and the attachment. The demurrer was overruled. Defendant Rector again appeared specially by counsel and renewed his motion that the plaintiff be required to give bond in the penalty of $40,000. This motion likewise was overruled.

Perceiving no error in the court's orders of March 25th and May 18th, 1931, we affirm the same.

*Affirmed.*