JUNIUS S. McHENRY *v.* J. ELWOOD HUMES, *Clerk, etc.*

(No. 7334)

Submitted May 24, 1932. Decided June 7, 1932.

*Martin Brown,* for plaintiff in error.

MAXWELL, JUDGE:

This is a writ of error to an order of the circuit court of Marshall County refusing a writ of mandamus.

Plaintiff in error, relator, having dismissed a chancery proceeding at Rules, demanded of the clerk that he return to the relator $12.50 of a fee of $15.00 which he had paid to the clerk upon the institution of the cause. The clerk's refusal precipitated this proceeding in mandamus.

Relator says that the only fees which were earned in the cause were $1.75 by the clerk for issuing process, recording return and making necessary entries; and 75 cents by the sheriff for serving summons.

It is the position of the clerk, respondent, that there is no provision of law which requires him to return to the relator any portion of the $15.00 fee which was paid in advance, even though the suit was dismissed by the plaintiff before bill was filed.

The statute upon which respondent relies is chapter 35 of the Acts of the Legislature of 1931, amending and reenacting section 11, article 1, chapter 59, of the Code of 1931. The pertinent portions of the new statute read:

> "The clerk of a circuit court shall charge and collect for services rendered as such clerk the following fees, and such fees shall be paid in advance

by the parties for whom such services are to be rendered:

For instituting or docketing any action, suit or other proceeding, by original process, removal or otherwise, and for any services the clerk may perform therein except as hereinafter set out, where there are not more than five defendants and not more than five witnesses, the fee of the plaintiff shall be * * * For any suit in equity not otherwise herein provided for, fifteen dollars; * * *."

The repealed statute (Code 1931, 59-1-11) set forth in detail the several fees to which the circuit clerk was entitled for various items of service rendered. It is under the terms of that repealed statute that relator says the clerk was not entitled to collect from him more than $1.75 for the services rendered by the clerk in said chancery cause.

It will be noted that the new statute changes the entire plan. Instead of directing that the circuit clerk charge prescribed fees for the various items of service rendered, it requires that a substantial fee be paid by the plaintiff to the clerk in advance, and that in all cases where there are not more than five defendants and not more than five witnesses the fee thus paid shall compensate the clerk for all services rendered in the cause to the plaintiff, except certain items enumerated in the statute.

One ground relied upon by relator in support of his attack upon the said new statute is that it is inconsistent with Code 1931, 59-1-20, a time-honored statute, which provides, in substance, that there shall be no advance charges of fees to litigants residing in the county where the service is rendered. Clearly, there is irreconcilability between this provision and the provision of the said new statute which requires that the initial fees of the circuit clerk shall be paid in advance. But this presents no difficulty because under a settled canon of statutory construction where there is irreconcilable conflict between an old statute not expressly repealed and a new one, the latter must prevail. 36 Cyc., p. 1147; 2

Lewis' Sutherland Statutory Construction (2nd Ed.), secs. 443 and 447.

It is urged by relator that the said 1931 enactment is violative of the "due process" clause of the state constitution. We are not favorably impressed by this suggestion. The underlying purpose of the "due process" clauses of both the federal and state constitutions is to guarantee that rights of persons may not be dealt with in judicial proceedings save upon due notice, with fair and reasonable opportunity for a hearing, and in accordance with procedure which has been ordained for the preservation of personal and property rights. *August* v. *Gilmer,* 53 W. Va. 65, 44 S. E. 143. Due process of law means "the due course of legal proceedings according to those rules and forms, which have been established for the protection of private rights, securing to every person a judicial trial before he can be deprived of life, liberty or property." *Peerce* v. *Kitzmiller,* 19 W. Va. 564. Considered in the light of this established analysis of the meaning and import of the "due process" clause, it is manifest that a legislative requirement of the payment of a fee by a plaintiff upon the institution of a suit does not in any manner deprive him of due process of law. His right to an open and fair hearing under settled procedure is in no wise imparied. The due process mandate of our organic law applies to all cases alike, but there is no violation of it here.

Another constitutional provision is invoked by relator: "Justice shall be administered without sale, denial or delay." W. Va. Const., Art. III, sec. 17. It is urged that the 1931 enactment under consideration amounts to a sale of the right to institute a suit.

The meaning of this constitutional provision can best be determined by giving consideration to the history which gave rise to it. We derive it from the 29th chapter of Magna Charta, "which alone," writes Lord Blackstone, "would have merited the title that it bears of the Great Charter," and which chapter is stated in 1 Minor's Institutes, page 60, to be "the foundation of English and American liberty." That

chapter provides that "no freeman shall be taken, or imprisoned, or disseised from his freehold, or liberties, or immunities, nor outlawed, nor exiled, nor in any manner destroyed, nor will we come upon him or send against him except by legal judgment of his peers or the law of the land. We will sell or deny justice to none, nor put off right or justice." Bouvier's Law Dictionary.

It was suitable and proper that the Great Charter inveigh against sale of justice, because at that time it was common knowledge that justice was hastened or delayed for a price.

In *Perce* v. *Hallett*, 13 R. I. 363, there was under discussion a Rhode Island constitutional provision similar to the West Virginia provision here involved. The court's discussion is illuminating:

> "The provision has a history which sheds light on its meaning. It was borrowed from Magna Charta, and in England the generality of jurists and legislators have supposed and acted on the supposition that it does not prohibit such fees. Reeves' History of the English Law, Finlason's ed. vol. 1, pp. 284-287, and notes. The better opinion is that it was designed to abolish, not fixed fees, prescribed for the purposes of revenue, but the fines which were anciently paid to expedite or delay law proceedings and procure favor. See Thompson's Essay on Magna Charta, p. 230. The character of those fines is copiously exemplified by Madox in the twelfth chapter of his History of the Exchequer. They appear to have been arbitrary exactions, often outrageously oppressive. Madox concludes his twelfth chapter with the following language: 'Some men used to pay fines to have or obtain justice or right; others, to have their right or their proceedings or judgment speeded; others, for stopping or delaying of proceedings at law; and others were obliged to pay great and excessive fines (viz., a fourth part, a third part, or half of the debt sued for) to obtain justice and right, according to their several cases, so that the king seemed to sell justice and right to some and to delay or deny it to others. Against these mischiefs a remedy was provided by a clause in the great charters of liberties, made by King John and King Henry

III. That clause in each of those charters runs in the same or consonant words, which are these: *Nulli venemus, nulli negabimus, aut differemus rectum aut justiciam.*' Mag. Char. Joh. 40; Char. Hen. III. 33.''

The non-applicability of this constitutional provision is thus stated in 12 Corpus Juris, p. 1291, citing many cases to sustain it:

"Statutes requiring the payment of reasonable court costs and fees or of security for such disbursements do not violate the constitutional provision that justice shall be administered freely and without purchase, unless requiring the payment of such costs and fees discriminates between parties who before the law are entitled to the same remedy under the same conditions, unless the imposition of costs is unreasonable, or unless it operates as a penalty on the exercise of the constitutional right to have rights and liabilities declared by the courts.''

We are therefore impressed that when the framers of our constitution wrote in it that justice shall be administered without sale, denial or delay, it was thereby intended to denounce any practices that might involve abuses of the kind sought to be destroyed by similar language in Magna Charta. Obviously it was not meant that the legislature may not prescribe proper fees to be charged by magistrates and clerks of courts. Fees incident to litigation have obtained in this state since its organization, likewise in Virginia when this state was a part of that commonwealth. Manifestly the prescribing by the legislature of reasonable and proper fees to be taxed against litigants does not amount to a sale of justice within the meaning of the constitution. If so, a fee of 50¢ for clerical services would be just as much a sale as a fee of $15.00, and the whole fee system as applied to court officials would come under the same malediction. Of course, common sense tells us that there is a breaking point beyond which an ostensible fee would be so oppressive as to cease to be in reality a fee and to become violative of the spirit of the constitution, but that condition does not exist as to a fee of the sort involved in this case.

The fixing of costs and fees is peculiarly a legislative function. It involves a matter of discretion not to be interfered with by the courts so long as no organic law is violated. Ordinarily a fee of $15.00 for a plaintiff in a chancery suit, covering the routine services to be rendered therein by the clerk, is not excessive. The reasonableness of the fee must be measured by the usual and ordinary case and not by the unusual one. The usual case progresses to final decree. The statute was intended primarily for such case. But the legislature has not seen fit to make exception of a case which is dismissed in its early stages. In a case such as the one under discussion, dismissed by the plaintiff at Rules before the bill was filed, there would seem to be hardship upon the plaintiff in that he had been required to pay a fee of $15.00 to cover services which, in large measure, were never rendered. We say again, however, this is a matter of legislative policy.

It is proper to observe in conclusion that the fee of $15.00 collected by the clerk does not go to his personal benefit, but under Code 1931, 59-1-28, is received by him for the sole use of the treasury of the county.

We affirm the judgment of the circuit court.

*Affirmed.*