BETTY LOWTHER HUMPHREY

*v.*

KATHRYN K. MAUZY, *Clerk,*
*Circuit Court of Tucker County*

(No. 13069)

AND

SHELBA JANE LONG STEWART

*v.*

KATHRYN K. MAUZY, *Clerk,*
*Circuit Court of Tucker County*

(No. 13070)

Submitted April 20, 1971.          Decided May 25, 1971.

*M. E. Mowery, Jr., Larry V. Starcher,* for relators.

*J. Pat Nichols,* Prosecuting Attorney, Tucker County, for respondent.

CALHOUN, JUDGE:

This case involves two original proceedings in mandamus, one instituted by Betty Lowther Humphrey, as petitioner, and the other instituted by Shelba Jane Long Stewart, as petitioner, against Kathryn K. Mauzy, in her official capacity as Clerk of the Circuit Court of Tucker County, the respondent in each of the two cases. In view of the fact that the two mandamus proceedings involve similar factual situations and substantially identical legal questions, they have been combined for submission and decision.

Each case was submitted for decision upon the mandamus petition, upon an answer of the respondent and upon briefs of counsel for the respective parties, oral argument having been waived by agreement of counsel.

In each of the two cases, the petitioner seeks to compel the respondent clerk to enter in the appropriate civil order book in her office an order by which a divorce from the bonds of matrimony was granted to the petitioner. In each of the two cases, the respondent has refused to record the order because of the failure and refusal of the petitioner to pay to the respondent clerk the $10 fee which is prescribed by Code, 1931, 59-1-11, as amended, in the following language:

"The clerk of a circuit court shall charge and collect for services rendered as such clerk the following fees, and *such fees shall be paid in advance* by the parties for whom such services are to be rendered:

"For instituting any civil action under the rules of civil procedure, * * * or any other action, cause, suit or proceeding, ten dollars." (Italics supplied.)

In each case it is alleged in the mandamus petition that the respondent clerk permitted the petitioner, as the plaintiff, to institute a divorce action against her husband in the Circuit Court of Tucker County without requiring payment to the respondent of the $10 fee and that advance payment of the fee was not required by the respondent because the plaintiff proceeded in forma pauperis by filing with the respondent an affidavit in compliance with the provisions of Code, 1931, 59-2-1, which statute is as follows:

"A poor person may be allowed by a court to sue or defend a suit therein without paying fees, or costs, whereupon he shall have from any counsel which the court may assign him and from all officers, all needful services and process, and also the assistance of witnesses, without any fees to them therefor, except what may be included in the costs recoverable from the opposite party. A poor person, within the meaning of this section, shall be one who shall make and file in the court, *or with the officer whose services may be demanded or required, an affidavit stating that he is pecuniarily unable to pay fees or costs, or counsel fees, and upon the filing of such affidavit in court or with any officer, then such officer shall perform any services required by law to be performed by him as if the legal fees for such services had been paid.* If any person shall swear falsely in such affidavit, and shall represent himself to be a poor person within the meaning of this article, when in fact he is pecuniarily able to pay the fees fixed by law, or to pay reasonable counsel fees, in any suit or action wherein he is a party, he shall be guilty of false swearing, and,

upon conviction thereof, shall be punished as provided by law for such offense." (Italics supplied.)

In each case a copy of the affidavit is filed with and made a part of the mandamus petition. It is not questioned that the affidavits were duly filed, nor is it questioned that the affidavits, in form, substance and language, properly complied with the provisions and requirements of the statute. It has not been asserted or proved that either affiant swore falsely in her affidavit or that either affiant is in fact not a "poor person" within the meaning and purview of the statute.

Filed with and made a part of each mandamus petition is a copy of a final judgment order endorsed for entry by the judge of the Circuit Court of Tucker County. Each of the two orders recites that sworn testimony of the plaintiff and her witness was heard by the court; that the testimony was duly reported by the official court reporter and ordered to be filed; that the plaintiff is entitled to an absolute divorce from the defendant as a matter of law on the grounds alleged by the plaintiff in her complaint; that the bonds of matrimony theretofore existing between the plaintiff and the defendant are dissolved; and that the plaintiff and the defendant "are hereby divorced and forever freed from the bonds of matrimony heretofore existing between them." Each of the two orders was regularly endorsed for entry on February 17, 1971, by the signature of the judge of the Circuit Court of Tucker County. The two orders are substantially identical in form and substance. Neither order makes any reference to fees or to costs, and neither order provides for a recovery of costs.

Each mandamus petition alleges that the respondent clerk "has failed to perform her nondiscretionary legal duty * * * in violation of the Petitioner's rights as guaranteed by the Fourteenth Amendment to the United States Constitution by refusing to enter a duly signed order of Circuit Judge D. E. Cuppett, Jr., dated the 17th day of February, 1971, granting a final divorce decree to the Petitioner * * *."

The respondent clerk alleges in both answers that counsel for the plaintiffs in the divorce actions, "is employed by the North Central West Virginia Legal Aid Society, Fairmont, West Virginia which Legal Aid Society is funded by the Office of Economic Opportunity, a federal agency"; that, before the divorce orders were endorsed for entry, the judge advised counsel for the plaintiff in each case that the plaintiff would be required "to pay court costs" and inquired whether the costs had been paid; that the costs consisted of the $10 clerk's fee and a court reporter's fee of $15 in each case; that, upon request of counsel for the plaintiff, the judge signed each order upon the promise of counsel to pay such costs to the respondent clerk upon his return to his office in Fairmont; that each order was signed by the judge with the understanding that it would not be entered of record until the costs had been paid; that counsel for the plaintiffs in the divorce actions subsequently forwarded to the official court reporter a check in payment of her fee of $15 in each of the two divorce actions; and that counsel for the plaintiff in each of the two actions appeared before the trial court on or about March 1, 1971, and advised the judge that neither of his clients was going to pay the clerk's fee of $10.

In each of the two mandamus proceedings in this Court, counsel for the petitioners filed, without objection, an affidavit which denies in part the allegations of the answers to the effect that it was understood and agreed that recordation of the divorce orders would be withheld or deferred until the "costs" were paid to the clerk. Counsel asserts in his affidavit that it was his understanding that the "costs" referred only to the $15 court reporter's fee in each case. A misunderstanding of what was included in the term "costs" apparently arose from counsel's firm belief that the filing fee of $10 in each case was waived by the clerk and rendered legally uncollectible upon the filing by the plaintiff of the affidavit in forma pauperis pursuant to the provisions of Code, 1931, 59-2-1. The misunderstanding appears to have arisen in part because of a

belief of counsel for the plaintiffs that the court reporter was not paid on a salary basis but only by fees earned by her as court reporter, and that, therefore, the court reporter's fees were not a part of "court costs" to which the judge referred.

The general rule is that it is the ministerial, mandatory duty of a clerk of a circuit court to record all orders properly endorsed by the judge for entry of record. It is clear from many decisions of this Court that a court of record speaks only by its records and that what is not thereby made to appear does not exist in law. *State ex rel. Mynes* v. *Kessel*, 152 W.Va. 37, pt. 4 syl., 158 S.E.2d 896; *Bowles* v. *Mitchell*, 146 W.Va. 474, pt. 1 syl., 120 S.E.2d 697.

Code, 1931, 59-2-1, pursuant to which the two plaintiffs were permitted by the respondent clerk to proceed in forma pauperis, provides that, upon the filing of a proper affidavit, "such officer *shall* perform any services required by law to be performed by him, as if the legal fees for such services had been paid." (Italics supplied.)

R.C.P. 79(b) is as follows: "The clerk shall keep a book known as 'civil order book' in such form and style as may be prescribed by the supreme court of appeals, *and shall record therein every order and judgment.* The clerk shall show in the civil order book the date when the judgment or order was noted in the civil docket." (Italics supplied.) R.C.P. 58 is as follows: "Subject to the provisions of Rule 54(b), the court shall promptly settle or approve the form of the judgment and sign it as authority for entry by the clerk. *The clerk, forthwith upon receipt of the signed judgment, shall enter it in the civil docket as provided by Rule 79(a).* The notation of a judgment in the civil docket as provided by Rule 79(a) constitutes the entry of the judgment; and the judgment is not effective before such entry. The entry of judgment shall not be delayed for the taxing of costs or to permit a motion for a new trial or any other motion permitted by these rules." (Italics supplied.)

As the basis for her refusal to record the final judgment orders in the two divorce actions, the respondent clerk asserts that she was acting pursuant to directions and orders given to her by the judge. In her answers she alleges that, in this respect, the judge was acting pursuant to the provisions of Code, 1931, 48-2-11. That statute is applicable to actions for divorce and to actions for affirmation or annulment of marriages. The pertinent provisions of the statute are as follows: "Costs may be awarded to either party as equity and justice require, and in all cases the court, in its discretion, may require payment of costs at any time, and *may suspend or withhold any order or decree until the costs are paid.*" (Italics supplied.)

Costs were unknown at common law. They are created and provided for by statute and may be imposed, recovered or collected only as authorized by statute. *Burdette v. Campbell,* 126 W.Va. 591, 597, 30 S.E.2d 713, 716; 5 M.J., *Costs,* Section 4, page 5; 20 C.J.S., *Costs,* Section 2, page 259; 20 Am. Jur. 2d, *Costs,* Section 4, page 7. In *McHenry v. Humes,* 112 W.Va. 432, 164 S.E. 501, relating to the fee of $15 then required by statute to be paid to the clerk by the plaintiff upon the institution of a suit in chancery, the Court (112 W.Va. 432, 438, 164 S.E. 501, 504) stated: "The fixing of costs *and fees* is peculiarly a legislative function. It involves a matter of discretion not to be interfered with by the courts so long as no organic law is violated." (Italics supplied.) We are of the opinion, therefore, that the respondent as clerk had no right to demand payment and that the trial court had no right to require payment of the $10 fee from the petitioners, in the circumstances of these cases, unless authorized by statute to do so.

We are of the opinion that the trial court applied too strictly the provision of Code, 1931, 48-2-11, that "in all cases the court, in its discretion, may require payment of costs at any time, and may suspend or withhold any order or decree until the costs are paid." That portion of the statute is prefaced by the following statement: "Costs may be awarded to either party as equity and justice require,

\* \* \* ." As we have stated previously, neither divorce order made any award of costs. A distinction is sometimes made between "fees" and "costs" which may be awarded, for instance, to the prevailing party upon final judgment. 20 C.J.S., *Costs,* Section 1(b), page 259; 20 AM. JUR. 2d, *Costs,* Section 1, page 5. Assuming that the clerk's fees involved in this case properly may be considered "costs" within the statutory provision relied upon by the trial court, we are of the opinion that this statute cannot be considered apart from the provisions of Code, 1931, 59-2-1, pursuant to which the respondent clerk permitted the plaintiffs to proceed in forma pauperis in the divorce actions. Both statutes relate to "costs" and should be considered in pari materia; otherwise the statute which permits poor persons to proceed in forma pauperis would be rendered completely ineffectual.

We are of the opinion that a proper decision of the instant cases is controlled by *Boddie* v. *State of Connecticut,* 401 U.S. 371, which was decided March 2, 1971, approximately two weeks after the date of the divorce orders involved in these mandamus proceedings. The *Boddie* case involved a class action instituted in the United States District Court for the District of Connecticut by certain persons who were recipients of public welfare benefits. The action was instituted for the purpose of challenging the validity of a provision of a Connecticut statute which contained the following language: "There shall be paid to the clerks of the supreme court or the superior court, for entering each civil cause, forty-five dollars \* \* \*." An additional sum of $15 is usually required in such courts for the service of process by the sheriff, although as much as $40 or $50 may be necessary where notice must be given by publication. It was undisputed that the persons who instituted the class action were unable financially to pay the required fees and that, therefore, simply by reason of their indigency, they were unsuccessful in their attempts to institute divorce actions in Connecticut courts. The district court upheld the validity of the requirement of payment of the fees as a

prerequisite to the right to institute and to maintain an action for divorce.

In reversing the judgment of the district court, the Supreme Court held that due process of law prohibits a state from denying, solely because of financial inability to pay court fees and costs, access to its courts to indigents who, in good faith, seek judicial dissolution of their marriages. The Court's opinion contains the following statement which we consider pertinent to the instant cases: "Moreover, other alternatives exist to fees and cost requirements as a means for conserving the time of courts and protecting parties from frivolous litigation, such as penalties for false pleadings or affidavits, * * *." By way of summarizing its decision, the Court stated:

> "Our conclusion is that, given the basic position of the marriage relationship in this society's hierarchy of values and the concomitant state monopolization of the means for legally dissolving this relationship, due process does prohibit a State from denying, solely because of inability to pay, access to its courts to individuals who seek judicial dissolution of their marriages."

For reasons stated in this opinion, the Court holds that the respondent clerk has a mandatory, nondiscretionary duty to record the two divorce orders in the appropriate civil order book in her office; and that, in view of the undisputed fact that plaintiffs were poor persons within the meaning and purview of the provisions of Code, 1931, 59-2-1, the trial court was without legal authority to direct the respondent clerk to withhold the divorce orders from proper recordation merely because the plaintiffs in the divorce actions were financially unable to pay the $10 fees prescribed by Code, 1931, 59-1-11, as amended.

Mandamus lies to require the discharge by a public official of a nondiscretionary legal duty. *State ex rel. Greenbrier County Airport Authority* v. *Hanna,* 151 W.Va. 479, pt. 3 syl., 153 S.E.2d 284; *State ex rel. Smith* v. *Kelly,* 149 W.Va. 381, pt. 1 syl., 141 S.E.2d 142.

For reasons stated in this opinion, the writs of mandamus as prayed for are awarded.

*Writs awarded.*