STATE *ex rel.* DAYMON PAYNE *and*
MARY PAYNE, *his Wife*

*v.*

RUSSELL R. WALDEN, *Constable, etc., et al.*

(No. 13183)

Submitted April 26, 1972.          Decided August 1, 1972.

*E. Dandridge McDonald, J. David Cecil,* for relators.

*John N. Charnock, Jr., George A. Daugherty,* for respondents.

HADEN, JUDGE:

This is an application for an original writ of prohibition by relators, Daymon Payne and Mary Payne, husband and wife, herein referred to as the "tenants", against respondents, Russell R. Walden, a Constable for Elk District, Kanawha County, West Virginia, Norman R. Buffington, a Justice of the Peace for Elk District, Kanawha County, and Mamie Swiny, a landlord, to test and attack the constitutionality of the procedures authorized under the West Virginia Distress Statute, West Virginia Code, Chapter 37, Article 6, Section 12, (Michie 1931) [hereinafter referred to as "Code, 37-6-12" etc.], and the West Virginia Forthcoming Bond Statute, Code, 38-6-7 and 12, alleging that the distress statute is void on its face as being violative of the due process provisions of the State and Federal Constitutions and that the Forthcoming Bond Procedure denies the relators the equal protection of the laws guaranteed by the Federal Constitution by discriminating against them as indigents. The relief sought is to prohibit respondents from selling relators' property levied upon without notice or the opportunity to be heard.

On August 20, 1971, the tenants, who are welfare recipients, rented upon a month-to-month oral lease for the sum of $90.00 per month in advance, a dwelling house owned by the landlord Swiny, located on U.S. Route 119, in Elk District, Kanawha County, West

Virginia. This dispute arose when the landlord, on December 14, 1971, sought a distress warrant for the sale of tenants' household furnishings and personal property upon the landlord's *ex parte* affidavit presented to Squire Buffington alleging that tenants owed her back rent in the amount of $90.00. Subsequently the Justice issued a distress warrant to Constable Walden who entered the premises of the tenants by force during their absence and listed the entire personal property found therein and notified the tenants by posting Notice of Constable's Sale that he had levied on their property which would be sold at public auction on December 31, 1971.

On December 29 and 30, 1971, prior to the Constable's Sale date, the tenants applied first to the Common Pleas Court of Kanawha County and then to the Circuit Court of said county for injunctions to prevent the impending sale and to request a timely hearing to determine the constitutionality of the summary distress sale procedure. Both of the applications for injunction were refused by a final order entered January 17, 1972.

The application for the writ in the instant case was made on January 18, 1972; the rule issued on January 24, 1972, and was made returnable on April 25, 1972 at which time this case was presented upon the pleadings, briefs and oral argument of counsel for the parties.

It is acknowledged that the respondents herein acted under color of law, with the possible exception that the Justice volunteered a hearing on matters of defense to distress to the relators without the necessity of their posting a forthcoming bond as required by Code, 38-6-7. Relators did not avail themselves of the Justice's offer for a hearing. The court in the injunction case found that the tenants failed to sustain the burden of proof of showing the rent in question was not owing. The facts also show that the tenants were deprived of the full use of their property by levy but that the property was not actually taken in custody by seizure.

The questions presented for decision are as follows:

Whether the statutory summary distress procedure which denies a tenant notice and the right to be heard prior to the deprivation of his property is, on its face, unconstitutional as a denial of due process guaranteed by the Fourteenth Amendment to the United States Constitution and Article III, Section 10 of the West Virginia Constitution?

Whether the statutory Forthcoming Bond Procedure which provides that a hearing is preconditioned on the posting by a tenant of a bond in an amount of double the value of the property distrained, constitutes a denial of equal protection of the laws to a tenant who is an indigent, in violation of the Fourteenth Amendment of the United States Constitution?

The relators also briefed and argued, but did not plead, the question of whether the statutory summary distress procedure allowing a forcible entry into the demised premises and seizure of tenants' property is, on its face, unconstitutional as an unreasonable search and seizure prohibited by the Fourth Amendment and Fourteenth Amendment to the United States Constitution.

The West Virginia statute providing for distress for rents permits the issuance of a distress warrant ordering a state agent to levy and seize a tenant's property simply upon an *ex parte* affidavit of his landlord claiming rent is due and owing. The warrant need not be predicated upon prior demand for rent alleged to be due nor on authorization other than the landlord's word. The statute neither provides for notice to be given the owner of the property sought nor gives him an opportunity to challenge the levy or seizure at any kind of prior hearing. Code, 37-6-12.

The officer to whom the levy is directed may break and enter the tenant's premises to levy upon the property of the tenant. The levying officer may merely inventory the personal property found on the demised premises and post the same with a Notice of Constable's Sale stating the time and place of the sale, or, in addition he may seize the

property found and hold it for the sale. Code, 37-6-14. See also Code, 50-14-19.

A tenant whose property is distrained may contest the taking after it occurs if he posts a forthcoming bond to the levying officer in favor of the landlord in an amount of not more than double the value of the distrained property. The tenant's right to contest the taking of his property or the amount, if any, of the rent due occurs, in the first instance, only after he breaches the condition of the forthcoming bond and the landlord brings action thereon. Code, 38-6-7 and 38-6-12. *State ex rel. Myers v. Hodge,* 129 W.Va. 820, 42 S.E.2d 23 (1947).

The only other remedy available to the tenant after the taking and before the sale of his property is to affirmatively claim his right to hold personal property in the value of $200.00 exempt from execution or other process under Code, 38-8-1. This right is not extended to one who is unmarried and without children who has reached his majority.

Other court actions are available to the tenant, but only after the sale. See Code, 37-6-15 providing a right of action for actual damages arising from unlawful or irregular taking of property, such as an excessive levy. And, if the property was distrained for rent not due, there is an action for wrongful seizure and sale. See Code, 55-7-3, as amended. There is also an undoubted common law right of action for damages. *Gurfein v. Howell,* 142 Va. 197, 128 S.E. 644 (1925).

Without exhausting the possibilities of the tenant's remedies in regard to the taking of his property under color of law, suffice it to say all methods of recovery are denied him *before* the taking provided in the distress for rents procedure.

The statutory distress for rents procedure has been a part of the law of this State since its formation. The use of the writ or distress warrant as an aid to a landlord seeking "back rent" is an ancient writ available to our English

antecedents since the twelfth century. Originally, it was an extrajudicial "self-help" proceeding used by the feudal lord or his bailiff over his servants and vassals, as a pledge or security for the payment of rent or the rendering of services due by the tenant. 2 POLLOCK & MAITLAND, HISTORY OF ENGLISH LAW, 576 et seq. (2d ed. 1909). In one form or another it has been accorded the dignity of codification by the Parliament, see *The Sale of Distress Acts,* William and Mary, c. V, (1689) ; and by the Assembly of our mother state, Virginia, Title 41, Chapter 138, Virginia Codes 1849 and 1860. This State continued to use the laws of Virginia pertaining to distress until the adoption of the Code of West Virginia of 1868, which, in Chapter 93, by and large, ratified preexisting provisions given us by the Virginia Assembly. Though our statute concerning distress has on occasion been amended and reenacted, it has retained its basic form and content to the present day. It gives the landlord a speedy and efficient method of compelling a tenant to pay rent previously due or to give a sufficient amount of property to satisfy that rent.

The statute, however, is attacked in this action as being unconstitutional on its face because it may deprive a tenant of his property or the use of his property for a period of time without notice and without the opportunity to be heard to contest the taking. Once previously this question was presented to this Court. Before the turn of the century the case of *Anderson v. Henry,* 45 W.Va. 319, 31 S.E. 998 (1898), held that the Fourteenth Amendment to the Constitution of the United States does not render our statute law allowing distress warrant for rent unconstitutional and void. Judge Brannon, speaking to the development of the law as it existed at that time said, at page 325:

> "The remedy of distress existed before the discovery of America, and was brought to Virginia by Capt. Smith, and has never ceased; and it seems useless to argue to show that a remedy so long antedating said amendment, a

remedy for and against all like, [sic] is not destroyed by it. That amendment is not the 'scarecrow' it is often represented to be; it does not overthrow state laws, rights and remedies, to the extent and purposes for which it is often cited. It respects the common law, the statute law, the remedies and procedure existing in the state at its adoption. Cooley, Const. Lim., 434, note 1. It came to preserve, not to destroy, existing rights. Just as well say that the tax bill seizing a horse for taxes is not due process of law."

Shortly thereafter, a federal district court, reviewing the West Virginia law, approved the holding of Judge Brannon in the *Anderson* case, *supra. In re McIntire,* 142 F. 593, (N.D. W.Va., 1906).

This Court, in construing the distress statute, has approved the holding in the *Anderson* case, *supra,* in more recent decisions. See *Byrd v. Rector,* 112 W.Va. 192, 163 S.E. 845, 81 A.L.R. 1213 (1932); *Beirne v. Snyder,* 114 W.Va. 691, 173 S.E. 570 (1934); and *State ex rel. Myers v. Hodge,* 129 W.Va. 820, 42 S.E.2d 23 (1947). By assimilation, these decisions indicate that the taking of one's property without hearing and without notice by agents of the state is a mere temporary inconvenience and that the deprivation is not a denial of due process in that the tenant has other available remedies subsequent to the taking.

Parenthetically, one might observe that for a period of time between 1925 and 1931, the Legislature of this State accorded a tenant whose property was to be levied upon or seized under this statute a hearing prior to the distress sale. See Acts of the Legislature, Regular Session, 1925, Chapter 80, and *Beirne v. Snyder, supra.* However, this amendment was removed in the reenactment of this statute by the Code of 1931. No comment as to the reasons for its being included in 1925 nor any comment for the reasons for its deletion in 1931 was made by the revisors of the Code.

State laws and procedures which affect the personal and property rights or entitlements of individual citizens have been subject to increasing scrutiny by the federal judiciary. Recent decisions by the United States Supreme Court indicate a new and broadened sensitivity to individual rights affected by particular laws of a state, the due process of which are measured by the strictures of the Fourteenth Amendment to the United States Constitution.

The case of *Sniadach v. Family Finance Corporation of Bay View,* 395 U.S. 337, 89 S. Ct. 1820, 23 L. Ed. 2d 349 (1969) has evolutionized the thinking of the courts and presented redrafting problems of magnitude to Legislatures throughout the land. In *Sniadach* the Wisconsin statutory prejudgment garnishment procedure permitted a creditor to use a state agent to freeze one-half of a defendant's wages without notice being afforded to the debtor and without extension of a pre-seizure hearing to determine the propriety of the taking. The Court held that such a procedure, absent a showing of a special or extraordinary State or creditor interest, plainly violated fundamental principles of procedural due process and was unconstitutional on its face.

The importance of this case should be emphasized because, according to an able and prescient editor of the Law Review: "[I]t was the first time procedural due process was used by the [Supreme] Court to strike down a state law which permitted the owner to be deprived of the *use* [emphasis in the original] of his property without a prior hearing even though the deprivation was temporary and a subsequent hearing guaranteed." Note, 74 W. Va. L. Rev. 170, 173 (1972); Accord: 83 Harv. L. Rev. 113 (1969).

The *Sniadach* decision would appear to implicitly overrule the Court's previous *per curiam* ruling in the case of *McKay v. McInnes,* 279 U.S. 820, 49 S. Ct. 344, 73 L. Ed. 975 (1929), upholding a decision of the Maine Supreme Court validating a general prejudgment attachment statute in the face of a constitutional attack

involving deprivation of due process. According to Justice Tobriner of the respected California Court,

> "[This departure or] * * * change, however, resulted not from an alteration of principles of due process but instead from a reevaluation of the potential and actual effect of prejudgment seizure upon debtors. Prior courts had facilely reasoned that prejudgment remedies did not amount to a 'taking' of property since the attachment or garnishment was only a 'temporary' measure (see McInnes v. McKay (1928) 127 Me. 110, 116, 141 A. 699, 702, affd. per curiam *sub nom.* McKay v. McInnes (1929) 279 U.S. 820, 49 S.Ct. 344, 73 L.Ed. 975), and consequently had concluded that general due process standards were not applicable. The *Sniadach* court, in contrast, recognized that realistically such procedures did deprive the debtor of the use of the attached property and that such deprivation was indeed a 'taking' of a significant property interest, which often resulted in serious hardship." *Randone v. Appellate Department of the Superior Court of Sacramento County,* 96 Cal. Rptr. 709, 488 P.2d 13, 23 (1971).

Using the platform of *Sniadach, supra,* courts have examined a myriad of state statutes affecting individual rights and privileges and found them to be wanting.

Where no prior notice or a hearing was extended to a person whose interest was affected by summary state process, the statute providing such process was held unconstitutional as violating procedural due process in all the following instances: *Fuentes v. Shevin,* 407 U.S. 67, 92 S. Ct. 1983, 32 L. Ed. 2d 556 (1972) (Pennsylvania and Florida prejudgment replevin statutes); *Bell v. Burson,* 402 U.S. 535, 91 S. Ct. 1586, 29 L. Ed. 2d 90 (1971) (suspension of driver's license); *Wisconsin v. Constantineau,* 400 U.S. 433, 91 S. Ct. 507, 27 L. Ed. 2d 515 (1971) (public "posting" of individual "excessive drinker"); *Goldberg v. Kelly,* 397 U.S. 254, 90 S. Ct. 1011, 25 L. Ed. 2d 287 (1970) (withdrawal of welfare rights); *Klim v. Jones,* 315 F. Supp. 109, (N.D.Cal. 1970) (confession of judgment); *Mihans v. Municipal Court for*

*the Berkeley Albany Judicial District, County of Alameda,* 7 Cal. App. 3d 479, 87 Cal. Rptr. 17 (1970) (repossession of residence).

The cases decided since the *Sniadach* decision have elaborated on its holding to the extent that not all deprivations of property taken under state process without notice and hearing are proscribed. According to Justice Harlan in *Boddie v. Connecticut,* 401 U.S. 371, 379, 91 S. Ct. 780, 28 L. Ed. 2d 113 (1971), " * * * *extraordinary situations where some valid governmental interest is at stake * * * justifies postponing the hearing until after the event."* [Emphasis supplied]. Extraordinary state interests which have justified postponing hearings are to be found in *Ewing v. Mytinger & Casselberry, Inc.,* 339 U.S. 594, 70 S. Ct. 870, 94 L. Ed. 1088 (1950) (seizure of mislabeled vitamins); *Yakus v. United States,* 321 U.S. 414, 64 S. Ct. 660, 88 L. Ed. 834 (1944) (wartime price controls); *North American Cold Storage Company v. City of Chicago,* 211 U.S. 306, 29 S. Ct. 101, 53 L. Ed. 195 (1908) (seizure of food unfit for human use). Recently this Court reviewed just such a situation in *State ex rel. Bowen v. Flowers,* 155 W.Va. 389, 184 S.E.2d 611 (1971) where a pharmacist's suspension from participating in welfare medical programs without hearing was deemed proper, but only for a reasonable time.

Special creditor interests may also provide justification for a temporary deprivation of property without opportunity for hearing. See *Lebowitz v. Forbes Leasing and Finance Corporation,* 326 F. Supp. 1335 (E.D.Pa. 1971) where it is indicated that state policy in protecting resident creditors through foreign attachment procedures is valid. Accord: *Ownbey v. Morgan,* 256 U.S. 94, 41 S. Ct. 433, 65 L. Ed. 837, 17 A.L.R. 873 (1921) (Attachment necessary to secure jurisdiction in a state court).

Appropriate to the instant case, summary distress for rent procedures permitted by state statutes have also been considered in light of the *Sniadach* decision and have been held violative of the procedural due process

provisions of the Fourteenth Amendment in that they contain no acceptable pre-seizure protections for the owner of distressed property.

The recent and relevant case of *Santiago v. McElroy,* 319 F. Supp. 284 (E.D.Pa. 1970) held the Pennsylvania distress statute unconstitutional insofar as the same permitted levy and sale of a tenant's property before a hearing is held which is aimed "at establishing the validity, or at least the probable validity, of the underlying claim against the alleged debtor *before* he can be deprived of his property or its unrestricted use." Citing Harlan, J., concurring at page 343, *Sniadach v. Family Finance Corporation of Bay View, supra.*

Like the West Virginia statute (37-6-12), the Pennsylvania law allowed the creditor, through the state agent, to levy and seize the tenant's property without notice or hearing. The Georgia Supreme Court in *Blocker v. Blackburn,* 228 Ga. 285, 185 S.E.2d 56 (1971) declared a similar distress statute unconstitutional in violation of the Georgia and United States Constitutions, even though the tenant could delay the sale by posting bonds and though the taking was temporary in nature. See also, *Sellers v. Contino,* 327 F. Supp. 230 (E.D.Pa. 1971). All of these decisions negate distress statutes on the basis of due process defects.

Denial of equal protection of the laws is also urged as a test which this Court must apply to the facts before it. The relators are indigents and contend that the distress statute which denies them any forum for hearing until they post a forthcoming bond effectively deprives any person in their class—a poor person—of the ability to secure a hearing, and, therefore, such procedure denies them equal protection of the laws in contravention of the Fourteenth Amendment to the United States Constitution. Although relators do not refer to the West Virginia Constitution, it may be appropriate to mention a rather obscure provision of our Constitution, which provides:

"The courts of this State shall be open, and every person, for an injury done to him, in his person, property or reputation, shall have remedy by due course of law; and justice shall be administered without sale, denial or delay." W.Va. Const., Art. III, § 17.

and see *McHenry v. Humes,* 112 W.Va. 432, at page 437, 164 S.E. 501 (1932).

The character of the equal protection attack is not to the words of the statute itself, but rather to the effect which the statutory procedure brings to the particular person's circumstance. The argument is made that the access to the courts, and the application to be had in defense to a distress warrant, is unavailable to a person of low income as effectively as if there were a statute that only tenants possessed of certain assets may use the courts.

As was aptly stated by Justice Brennan in the case of *Boddie v. Connecticut, supra,* at page 389, the essence of the equal protection problem of a poor litigant is:

"Where money determines not merely 'the kind of trial a man gets,' [*Griffin v. Illinois,* 351 U.S. 12, 19 (1956)], but whether he gets into court at all, the great principle of equal protection becomes a mockery. A State may not make its judicial processes available to some but deny them to others simply because they cannot pay a fee."

A line of cases has established without question that poverty may deny one the equal protection of the laws of criminal justice in the states. See *Griffin v. Illinois, supra; Douglas v. California,* 372 U.S. 353, 83 S. Ct. 814, 9 L. Ed. 2d 811 (1963); *Williams v. Illinois,* 399 U.S. 235, 90 S. Ct. 2018, 26 L. Ed. 2d 586 (1970), and others to like effect.

The equal protection clause extends to state civil as well as criminal matters. *Smith v. Bennett,* 365 U.S. 708, 81 S. Ct. 895, 6 L. Ed. 2d 39 (1961); *Harper v. Virginia State Board of Elections,* 383 U.S. 663, 86 S. Ct. 1079, 16 L. Ed. 2d 169 (1966).

Although no case appears to have been decided regarding the precise question before this Court, the very recent decision of *Lindsey v. Normet*, 405 U.S. 56, 92 S. Ct. 862, 31 L. Ed. 2d 36 (1972) struck down the double rent bond prerequisites for tenant appeals, pursuant to the Oregon Forcible Entry and Detainer Statute, as a violation of the equal protection clause of the Constitution in regard to poor persons. The Court held that the bond requirement heavily burdened the statutory right to appeal and found that such requirement was not necessary to effectuate the state's purpose of preserving the property at issue. Justice White said at page 79: "The discrimination against the poor, who could pay their rent pending an appeal but cannot post the double bond, is particularly obvious." There is little difference, it would appear, in the double bond requirements of a Forcible Entry and Detainer Procedure and a double property value bond requirement of the Forthcoming Bond Procedure under the West Virginia statute, as the same would affect poor persons, who are tenants in either litigation.

The relator also contends in this action, in argument but not in pleading, that the statutory summary distress procedure allowing forcible entry and seizure on the demised premises of tenants' property, is, on its face, unconstitutional as an unreasonable search and seizure prohibited by the Fourth Amendment and the Fourteenth Amendment to the United States Constitution. While we do not believe it necessary to extensively discuss this question, in view of our holding to be set forth *infra,* we think that the contention might well merit consideration had the questions of due process and equal protection not been raised in this action.

Returning to the initial and primary issue presented by this application, we think the case turns on the question of due process. The distress for rent statute, Code, 37-6-12, does not provide the tenant notice or the opportunity to be heard in defense before his property is distrained upon and if the tenants in this case are denied a basic right, they are denied it by the very words of the statute.

The respondent justice contends that though the statute fails to provide a hearing, he offered a hearing to the tenants before the levy. We cannot agree that this would cure the problem or moot the case. It is no answer that a volunteered hearing or notice is given to him who is denied that right by statute. "Nor can extra-official or casual notice, or a hearing granted as a matter of favor or discretion, be deemed a substantial substitute for the due process of law that the Constitution requires." *Pulaski County v. Commercial National Bank,* 210 Ark. 124, 194 S.W.2d 883, 887 (1946); Accord: *Coe v. Armour Fertilizer Works,* 237 U.S. 413, 35 S. Ct. 625, 59 L. Ed. 1027 (1915); 16 AM. JUR. 2d, *Constitutional Law,* § 569 (1964).

It is also urged that inasmuch as the common law and statutory procedure for distress for rents antedates the Constitution of the United States and the formation of this State, the procedure was recognized as not being inconsistent with the principles of either the United States or West Virginia Constitutions. Further, that inasmuch as such a proceeding found its basis in common law and was treated historically as "non-juristic" in nature, the principles of constitutional law do not apply. Though history reflects the development of this procedure from one of a purely "self-help" character to a more formal proceeding wherein the agents of the state act at the behest of a landlord, it is now apparent that codification has accorded this procedure both the dignity and *responsibility* of a judicial proceeding. To the extent that the case of *Beirne v. Snyder,* 114 W.Va. 691, 173 S.E. 570 (1934) indicates or implies otherwise, it is disapproved. Though it has been recognized by this Court, "The remedy of distress existed before the discovery of America, and was brought to Virginia by Capt. Smith, * * *." *Anderson v. Henry, supra,* at page 325, it does not follow the procedure can be sustained today. "The fact that a procedure would pass muster under a feudal regime does not mean it gives necessary protection to all property in its modern forms." *Sniadach v. Family Finance*

*Corporation of Bay View,* 395 U.S. 337, 340, 89 S. Ct. 1820, 23 L. Ed. 2d 349 (1969).

Must we believe that the authors of the United States and West Virginia Constitutions recognized all the ramifications of the distress procedure and apprehended no violence to the rights of the tenants by the deprivation of his property without notice or hearing? We think not. So, too, learned authorities once asserted that black persons were chattels and not individuals with certain inalienable freedoms. Now as it is apparent that human beings, regardless of race, religion, wealth or sex, are to be accorded rights equally under the law, it is also apparent that one of those rights, property, cannot be taken from them by judicial process without a previous right to be heard, " * * * absent a countervailing state interest of overriding significance * * * ." *Boddie v. Connecticut, supra,* at page 377. We find that the defenses of prior accepted procedure and "non-juristic determination" are unavailing to the respondents in this case.

Undoubtedly, there are special characteristics incident to the landlord-tenant relationship which may justify statutory treatment inapplicable to other litigants. The tenant is, by definition, in possession of property of the landlord. Unless the law leaves an aggrieved landlord to his own devices, the legislature must provide a judicial mechanism of relative swiftness to prevent the withholding tenant from denying the landlord the right of income incident to owership by the tenant's refusal to pay rent and by his prevention of rental or sale to a third party. Many expenses of the landlord continue to accrue, whether the tenant pays his rent or not. Prompt judicial conclusion of disputes is desirable to prevent subjecting the landlord to undeserved economic loss and the tenant to unmerited harassment or dispossession if his actions and rental agreement provide otherwise.

Though we recognize these special considerations, we do not think we can continue to approve a procedure which denies a tenant a basic right under color of law.

The recent cases herein discussed of *Sniadach v. Family Finance Corporation of Bay View,* 395 U.S. 337, 89 S. Ct. 1820, 23 L. Ed. 2d 349 (1969); *Fuentes v. Shevin,* 407 U.S. 67, 92 S. Ct. 1983, 32 L. Ed. 2d 556 (1972); *Santiago v. McElroy,* 319 F. Supp. 284 (E.D.Pa. 1970); and *Blocker v. Blackburn,* 228 Ga. 285, 185 S.E.2d 56 (1971) are too persuasive. The statutory distress warrant procedure which permits property of a tenant to be levied upon and seized by the levying officer without prior notice and opportunity for hearing deprives the owner of his property without due process of law in contravention of Article III, § 10 of the West Virginia Constitution and the Fourteenth Amendment to the United States Constitution.

As it stands in Code, 37-6-12, the procedure constitutes only a legitimized form of harassment to bring the tenant to the landlord's outstretched hand. We feel that such a procedure is unnecessary in that landlords have other adequate statutory remedies. We feel that such procedure is unwarranted in that the tenant is denied his basic right of protest or defense before his property is taken. No special state interest of overriding significance can be demonstrated which will protect and preserve the statutory defect.

We do not think it necessary to pass upon the questions of equal protection and unreasonable search and seizure because, if a notice and hearing is denied by the statute before the distraint takes place, the issues of the tenant's indigency or the constable's right to break and enter locked premises are immaterial. This statute which denies hearing before deprivation of property applies to all possible classes of tenants, rich or poor; it cannot be faulted for over-exclusiveness or under-exclusiveness. The method of seizure which comes after the taking without hearing is not important since the defect, the summary taking, occurs first.

To the extent the distress for rent procedure deprives the tenant of his property without hearing or notice, it is unconstitutional and we necessarily overrule the holding

of *Anderson v. Henry, supra,* syllabus point 4, and those cases following it.

To the extent the case of *Byrd v. Rector,* 112 W.Va. 192, 163 S.E. 845, 81 A.L.R. 1213 (1932) explains away the deprivation of property without hearing as a temporary inconvenience to a tenant and therefore insubstantial in nature, it, too, is disapproved and overruled. When one is deprived of a right, it matters not that the deprivation is minimal. A restriction of a property right, temporarily or permanently, is nevertheless a prohibited curtailment of a right protected by the Constitution when such is accomplished without notice or hearing, absent a showing of a special or extraordinary State or creditor interest.

Our holding goes no further. Though the reasoning applied here may be applicable also to other summary civil remedies, we must be, and are, aware that a considerable body of statute and case procedure regulating various creditor-debtor relationships is an integral part of the subsisting law of this State. It represents legislative direction, wisdom and prerogative which will not be disturbed by this Court unless a particular and precise question is presented and compelling reason exists therefor.

The writ applied for is awarded.

*Writ awarded.*