714 S.E.2d 331

STATE of West Virginia, ex rel.
Rhonda BAY, Petitioners

v.

Brenda K. MARSHALL, Magistrate of
Wood County, et al., Respondents

State of West Virginia, ex rel. Ashleigh
and Daniel Jurkovich, Petitioners

v.

Jason Bennett, et al., Magistrate
of Roane County, et al.,
Respondents.

Nos. 35736, 35737.

Supreme Court of Appeals of
West Virginia.

Submitted March 9, 2011.

Decided May 3, 2011.

Bruce Perrone, Legal Aid of West Virginia, Charleston, WV, for the Appellants.

Victoria L. Casey, Charleston, WV, for the Intervenor West Virginia Landlords Association, Inc., of the West Virginia Landlords Association, Inc., Kanawha County/Charleston Chapter.

PER CURIAM:

In the consolidated cases examined by the Court in this matter, tenants have sought relief in the form of writs of mandamus and prohibition in cases originating separately in Wood County and Roane County. In *State ex rel. Rhonda Bay v. Honorable Brenda K. Marshall, Magistrate of Wood County, et al.,* tenant Rhonda Bay seeks a writ of mandamus to compel the Magistrate Court of Wood County to accept the filing of her appeal to the Circuit Court of Wood County without requiring her to post an appeal bond.[1] In *State ex rel. Ashleigh and Daniel Jurkovich v. Honorable Jason Bennett, Magistrate of Roane Co., et al.,* Ashleigh and Daniel Jurkovich seek a writ of mandamus to compel the Magistrate Court of Roane County to allow them to file an appeal without the payment of a filing fee. Subsequent to thorough review of the arguments of counsel, records submitted for review by this Court, and applicable precedent, this Court finds that the request-ed writs of mandamus should be granted as moulded. The Magistrate Courts of Wood County and Roane County failed to perform a non-discretionary duty by requiring the posting of an appeal bond in Ms. Bay's case and the payment of a filing fee in the Jurkoviches' case.

I.   Factual and Procedural History

A.   *Bay v. Magistrate of Wood County*

In the first of these two consolidated matters, Rhonda Bay, a tenant of landlord Albert Pryor, leased property in Parkersburg, West Virginia, through a month-to-month verbal rental agreement for $695.00 per month. According to the record in this matter, a water pipe on the premises broke in August 2010. Responding water company personnel ultimately reported unsafe conditions, and citations for violation of health and safety codes were issued.

Mr. Pryor filed an unlawful detainer action [2] against Ms. Bay in Magistrate Court in September 2010. Ms. Bay denied the allegations and asserted that she had not received notice of the hearing [3] held on October 6, 2010, during which immediate possession of the leased premises and costs of $387.22 were awarded to Mr. Pryor. When Ms. Bay sought to appeal this holding, she was informed that she would be required to pay an appeal bond despite the fact that she had been permitted to submit a financial affidavit pursuant to West Virginia Code § 59–2–1 (1999) (Repl.Vol.2005),[4] allowing her to pro-

---

1.   Ms. Bay also sought a writ of prohibition to prevent the Magistrate Court of Wood County from denying an automatic stay of the order granting possession of the rental premises to the landlord. Although Ms. Bay initially sought to retain possession of the rental premises during the pendency of this matter, her counsel represented during oral argument before this Court that she no longer wishes to retain possession of the premises while resolution of this matter is pending. This Court consequently declines to address the issue of the decision to refuse a stay of the judgment of possession. *See* W. Va.Code § 55–3A–3(g) (1999) (Repl.Vol.2008) ("During the pendency of any such appeal, the tenant is not entitled to remain in possession of the property if the period of the tenancy has otherwise expired.").

2.   The September 7, 2010, complaint filed by Mr. Pryor indicates, in a handwritten notation, that it is an unlawful detainer action. *See* West Virginia Code § 55–3–1(1923) (Repl.Vol.2008). However, the October 6, 2010, Wood County Magistrate Court Order references this matter as a wrongful occupation claim. *See* West Virginia Code § 55–3A–3 (1999) (Repl.Vol.2008).

3.   Although the court did mail a Notice of Hearing to Ms. Bay, it was apparently returned as undeliverable and was placed in a court file.

4.   West Virginia Code 59–2–1(a) provides as follows: "A natural person who is financially unable to pay the fees or costs attendant to the commencement, prosecution or defense of any civil action or proceeding, *or an appeal therein,* is permitted to proceed without prepayment in any court of this state, after filing with the court an affidavit that he or she is financially unable to pay the fees or costs or give security therefor." (Emphasis provided).

ceed in *forma pauperis* and waiving the payment of a normal circuit court filing fee.

In her request for relief with this Court, Ms. Bay maintains that the Magistrate Court lacked authority to require the posting of an appeal bond where a financial affidavit pursuant to West Virginia Code § 59-2-1 had been submitted and approved, waiving the payment of the circuit court filing fee. Specifically, Ms. Bay emphasizes that West Virginia Code § 50-5-12(a) (1994) (Repl.Vol.2008) provides that "[n]o bond shall be required ... of a person who has been permitted to proceed without prepayment in accordance with the provisions of" West Virginia Code § 59-2-1.

## B. *Jurkovich v. Magistrate of Roane County*

Mr. and Mrs. Jurkovich instituted a civil action against their landlord, Mr. Clark Crider, seeking compensation for the loss of use of rental premises due to flea infestation, allegedly caused by pets of a neighboring tenant. Subsequent to the filing of a counterclaim and a separate action by Mr. Crider claiming damages to the rental unit, Mr. Crider was awarded $1,298.60. Mr. and Mrs. Jurkovich sought to appeal the magistrate court determination to the Circuit Court of Roane County. Prior to the initiation of their civil action, Mr. and Mrs. Jurkovich had filed a financial affidavit pursuant to West Virginia Code § 59-2-1 and had been permitted to proceed in *forma pauperis*, waiving the requirement for payment of a magistrate court filing fee. However, upon their attempt to appeal, they were informed by court personnel that they would be required to pay the $146.00 filing fee to appeal from magistrate court to circuit court.

Mr. and Mrs. Jurkovich now seek a writ of mandamus to compel the Magistrate Court of Roane County to allow them to file an appeal without the payment of circuit court filing fees.

**5.** The Application and Financial Affidavit to proceed in *forma pauperis* is a single document, Form SCA-C & M201.03, approved for use in West Virginia courts. A copy is available in

## II. Standard of Review

This Court has consistently held that "[p]etitioners in mandamus must have a clear legal right to the relief sought therein and such right cannot be established in the proceeding itself." Syl. Pt. 1, *State ex rel. Kucera v. The City of Wheeling,* 153 W.Va. 538, 170 S.E.2d 367 (1969). In syllabus point two of *Kucera,* this Court also stated: "A writ of mandamus will not issue unless three elements coexist—(1) a clear legal right in the petitioner to the relief sought; (2) a legal duty on the part of respondent to do the thing which the petitioner seeks to compel; and (3) the absence of another adequate remedy."

## III. Discussion

In *State ex rel. Deblasio v. Jackson,* 227 W.Va. 206, 707 S.E.2d 33 (2011), this Court recently addressed the procedures available to qualified indigent litigants to initiate civil actions without the prepayment of fees, costs, and security. In *Deblasio,* this Court explained that a proceeding *in forma pauperis* is permitted through the procedures identified in West Virginia Code § 59-2-1, as quoted above, and is implemented through Rule 77(e) of the West Virginia Rules of Civil Procedure, Rule 22 of the Rules of Civil Procedure for the Magistrate Courts of West Virginia, and the *Financial Guidelines for Determining Eligibility for Waiver of Fees, Costs, or Security in Civil Cases,* approved by this Court on April 29, 2003.[5] In syllabus point three of *Deblasio,* this Court explained:

> The *Financial Guidelines for Determining Eligibility for Waiver of Fees, Costs, or Security in Civil Cases,* require the clerk of the court to make the initial determination whether the disclosures in an applicant's financial affidavit meet the *Guidelines* to proceed in *forma pauperis.* A writ of mandamus will issue to compel the clerk to perform that non-discretionary administrative duty.

every court clerk's office throughout West Virginia and this Court's website at http://www.state.wv.us/wvsca/rules/FeeWaiver/Affidavit.pdf.

Syllabus point four of *Deblasio* provides as follows:

> Where a clerk of a court has denied an application to proceed in *forma pauperis*, and the applicant has requested a review of that denial by a judge, the sole issue to be determined by the judge reviewing the application and financial affidavit is whether the applicant meets the *Guidelines for Determining Eligibility for Waiver of Fees, Costs, or Security in Civil Cases.*

The guiding language of West Virginia Code § 59–2–1 expressly provides that the statute applies to individuals "financially unable to pay the fees or costs attendant to the commencement, prosecution or defense of any civil action or proceeding, or an appeal therein...." Thus, fees associated with *an appeal* may also be waived upon the filing of a financial affidavit for the waiver of fees under the procedures of West Virginia Code § 59–2–1.[6] An additional financial affidavit may be required under certain circumstances, as identified in West Virginia Rule of Civil Procedure 77(e)(1),[7] explaining as follows:

> A person seeking waiver of fees, costs, or security, pursuant to Chapter 59, Article 2, Section 1 [§ 59–2–1] of the Code of West Virginia, shall execute before the clerk or a deputy an affidavit prescribed by the chief justice of the Supreme Court

of Appeals, which shall be kept confidential in divorce and domestic violence proceedings. An additional affidavit of indigency shall be filed whenever the financial condition of the person no longer conforms to the financial guidelines established by the chief justice of the Supreme Court of Appeals for determining indigency or whenever an order has been entered directing the filing of a new affidavit.

■ This Court also addressed this matter in footnote ten of *Deblasio*, explaining that "our rules and precedent permit a judge or magistrate to conduct a review, after the complaint is filed, as to whether a litigant is indigent and entitled to proceed in *forma pauperis.*" 227 W.Va. at 213 n. 10, 707 S.E.2d at 40 n. 10.

> These circumstances typically arise where information becomes available to the court that a litigant has greater assets than listed in the financial affidavit or where the litigant receives additional assets as a result of the litigation. Examples of this latter category are, *e.g.,* marital distribution in a divorce case or a settlement or award of damages in the civil case in which the litigant had previously been granted leave to proceed in *forma pauperis.* In these circumstances, the court may require the payment of fees, costs, or security previously waived, and require the timely

---

**6.** *See also Young v. Young,* 158 W.Va. 521, 525–26, 212 S.E.2d 310, 313 (1975):

> From the date of filing, March 4, 1974, that affidavit was a sufficient notice to the court system of the State, including this Court, that the appellant is entitled, as a pauper, to access to the courts to contest the processes of law invoked against him in equal measure as is provided those who are able to pay for the use of our system of justice and the services of its officers. Article III, Sections 10 and 17 of the West Virginia Constitution secure and guarantee that right to an indigent or pauper who desires to prosecute or defend rights protected by law. And, of course, the same rights are guaranteed a state litigant by the Fourteenth Amendment to the United States Constitution. *Boddie v. Connecticut,* 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971). In addition, West Virginia Code, Chapter 59, Article 2, Section 1 provides a statutory elaboration of the constitutional right which has been available to litigants in the Virginias since 1849. Once a poor person brings his status to the attention of the

courts, the protections of the statute and the Constitution should be promptly provided. *Mars v. Luff,* 155 W.Va. 651, 186 S.E.2d 768, 52 A.L.R.3d 839 (1972); *Humphrey v. Mauzy,* 155 W.Va. 89, 181 S.E.2d 329 (1971).

**7.** Rule 22 of the Rules of Civil Procedure for Magistrate Courts provides an identical process, as follows:

> (a) Filing of affidavit of indigency. A person seeking waiver of fees, costs, or security, pursuant to Chapter 59, Article 2, Section 1 [59–2–1] of the Code of West Virginia, shall execute before the clerk or a deputy an affidavit prescribed by the chief justice of the supreme court of appeals, which shall be kept confidential in domestic violence proceedings. An additional affidavit of indigency shall be filed whenever the financial condition of the person no longer conforms to the financial guidelines established by the chief justice of the supreme court of appeals for determining indigency or whenever an order has been entered directing the filing of a new affidavit.

payment (in accordance with the rules of the court) of any additional fees, costs, or security that may subsequently be incurred as a result of the litigation.

*Id.* at 213 n. 10, 707 S.E.2d at 40 n. 10.

■ With specific regard to the appeal bond requested in Ms. Bay's case, this Court explicitly held as follows in syllabus point two of *Rosier v. Rosier*, 162 W.Va. 902, 253 S.E.2d 553 (1979): "The appeal bond required by the Rules of the Supreme Court of Appeals is a cost within the meaning of *W.Va.Code*, 59–2–1, and a poor person, within the meaning of that statute, may prosecute an appeal on his own recognizance, rather than by posting a money bond."[8] Moreover, West Virginia Code § 50–5–12 provides that "No bond shall be required of any ... person who has been permitted to proceed without prepayment in accordance with the provisions of section one, article two, chapter fifty-nine of this code [59–2–1]."

■ The financial affidavits required for proceeding in *forma pauperis* were properly filed in each of the two consolidated cases examined herein.[9] In Ms. Bay's case, she filed the financial affidavit and was informed that the circuit court filing fee would be waived. Despite that waiver, however, she was required to pay the appeal bond to proceed with her appeal in circuit court. Similarly, Mr. and Mrs. Jurkovich proceeded in *forma pauperis* and had their magistrate court filing fee waived, but they were there-after informed that a filing fee would be charged to appeal from magistrate court to circuit court. Applying the statutory guidelines to the present factual scenarios, this Court finds that Ms. Bay should not be required to pay an appeal bond. Her financial affidavit, approved for the waiver of filing fees, should also have been accepted for waiver of the appeal bond, pursuant to authorities enumerated above. Likewise, the Jurkoviches should not have to pay a filing fee to appeal. Their financial affidavit, pursuant to West Virginia Code § 59–2–1, had been approved prior to the filing of the original action.

■ The statutory and rule authority for proceeding in *forma pauperis* provide the petitioners herein with a clear legal right to compel the clerks, by mandamus, to perform a nondiscretionary administrative duty. Although the courts could, at any point, require the submission of an additional affidavit of indigency,[10] the denial by the Magistrate Courts of Wood County and Roane County of the litigants' right to proceed without payment of the requested fees was in error. A writ of mandamus will therefore issue in each of these two consolidated cases.

Writs granted as moulded.

Justice KETCHUM concurs and reserves the right to file a concurring opinion.

---

8. *See also Bosserdet v. Poe*, 171 W.Va. 159, 298 S.E.2d 133 (1982). In *Bosserdet*, this Court addressed good cause for failure to timely appeal and explained as follows:

   Applying this test to the case before us, we conclude that the appellant had good cause for not appealing the magistrate judgment within twenty days. The record shows that although the magistrate knew that the appellant had been injured and was unemployed, he did not inform the appellant of the existence of *W.Va. Code*, 59–2–1 [1923] under which the appellant could have filed a pauper's affidavit and been excused from filing an appeal bond with money he did not have. Instead, the magistrate incorrectly informed the appellant that he would have to pay $1,129.00 if he wanted to appeal.

   171 W.Va. at 161, 298 S.E.2d at 135.

9. There is no dispute that both Ms. Bay and Mr. and Mrs. Jurkovich meet the financial guidelines to proceed in *forma pauperis*. As this Court succinctly stated in *Deblasio*, "the merits of a civil action proposed to be filed in *forma pauperis* is not one of the enumerated factors" for the determination of whether the individual is eligible to proceed in that fashion. 227 W.Va. at 211, 707 S.E.2d at 38.

10. In addition to the authority for this requirement provided by Rule 77(e)(1) or the West Virginia Rules of Civil Procedure and Rule 22 of the Rules of Civil Procedure for Magistrate Courts, as quoted above, the Financial Affidavit and Application issued by this Court specifies, at Section A(2), that the applicant "must file a separate affidavit and application anytime your financial situation no longer meets the official guidelines or anytime the court orders you to do so." As stated above, this document is available at this Court's website at http://www.state.wv.us/wvsca/rules/FeeWaiver/Affidavit.pdf.

KETCHUM, J., concurring:

I agree with the Court's ruling and write separately to expand on the issue raised in footnote one of the majority opinion. After reviewing this issue, it is clear that a tenant found to be in wrongful occupation of residential rental property, whose tenancy has expired, may not remain in possession of the rental property throughout the pendency of his appeal.

Magistrate Brenda Marshall entered an order of "Possession/Removal: Wrongful Occupation of Residential Rental Property" against Rhonda Bay following a hearing in magistrate court brought by Ms. Bay's landlord. The magistrate awarded immediate possession of the rental property to the landlord. Ms. Bay argued that the magistrate erred when ruling that Ms. Bay was not permitted to remain in possession of the rental property throughout the pendency of her appeal. During oral argument before this Court, counsel for Ms. Bay stated that she no longer sought to occupy the rental property. This issue is therefore moot but since it frequently arises in magistrate and circuit courts throughout the state, I will address Ms. Bay's argument.

Ms. Bay argued that the magistrate's ruling that she could not remain in possession of the rental property during the pendency of her appeal violated the automatic stay provision set forth in *W.Va.Code* § 50–5–12(a), whose last sentence states "[t]he filing or granting of an appeal shall automatically stay further proceedings to enforce the judgment." This statute must be read in conjunction with *W.Va.Code* § 55–3A–1 *et seq.*[1], entitled "Remedies For Wrongful Occupation of Residential Rental Property" (hereinafter "Wrongful Occupation Act"). The Wrongful Occupation Act was passed in 1983 "to provide the landlord with a quick procedure to remove a hold-over tenant[.]" *Criss v. Salvation Army Residences*, 173 W.Va. 634, 638, 319 S.E.2d 403, 407 (1984).

The controlling language of the Wrongful Occupation Act that governs the issue before us is found in *W.Va.Code* § 55–3A–3(g), which states:

> In the event an appeal is taken and the tenant prevails upon appeal, the relief ordered by the appellate court shall be for monetary damages only and shall not restore the tenant to possession if the term of the lease has expired, absent an issue of title, retaliatory eviction, or breach of warranty. *During the pendency of any such appeal, the tenant is not entitled to remain in possession of the property if the period of the tenancy has otherwise expired.*

(Emphasis added).

In the present case, Ms. Bay and her landlord had a month-to-month verbal tenancy agreement. The landlord was required to give her a full rental period's notice to vacate, which he did. Therefore, Magistrate Marshall found that Ms. Bay was in wrongful occupation of the premises and awarded monetary damages against her. Ms. Bay was not permitted to remain in possession of the property during the pendency of her appeal because her tenancy had expired.

The Wrongful Occupation Act does not permit a tenant found to be in wrongful occupation of residential rental property, whose tenancy has expired, to remain in possession of the property during the pendency of his appeal. The Act was passed to provide a landlord with a quick mechanism to remove a hold-over tenant. To allow a tenant to remain in possession pending the appeal would defeat the purpose of the Act and would create an incentive for a tenant to

---

1. *W.Va.Code* § 55–3A–1(a) states:

(a) A person desiring to remove a tenant from residential rental property may apply for such relief to the magistrate court or the circuit court of the county in which such property is located, by verified petition, setting forth the following:

(1) That he is the owner or agent of the owner and as such has a right to recover possession of the property;

(2) A brief description of the property sufficient to identify it;

(3) That the tenant is wrongfully occupying such property in that the tenant is in arrears in the payment of rent, has breached a warranty or a leasehold covenant, or has deliberately or negligently damaged the property or knowingly permitted another person to do so, and describing such arrearage, breach, or act or omission; and

(4) A prayer for possession of the property.

delay the appellate process. The Wrongful Occupation Act does not even permit a tenant in a wrongful occupation proceeding to seek a continuance without paying rent into court as it becomes due. *W.Va.Code* § 55–3A–3(d), states, "[i]f a continuance is granted upon request by a tenant, the tenant shall be required to pay into court any periodic rent becoming due during the period of such continuance."

In view of the purpose of the Wrongful Occupation Act and the plain language of *W.Va.Code* § 55–3A–3(g), a tenant found to be in wrongful occupation of residential rental property, whose tenancy has expired, may not remain in possession of the property during the pendency of his appeal.