# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**In Re: The Marriage/Children of:**

**Roger M., Jr., Respondent Below, Petitioner**

**vs)   No. 14-1318** (Kanawha County 11-D-2297)

**Jennilea M., Petitioner Below, Respondent**

**FILED**

September 11, 2015
**RORY L. PERRY II, CLERK**
**SUPREME COURT OF APPEALS**
**OF WEST VIRGINIA**

## MEMORANDUM DECISION

Petitioner Roger M., Jr.[1] ("Father"), *pro se*, appeals the order of the Circuit Court of Kanawha County, entered December 3, 2014, denying his appeal from an October 17, 2014, order of the Family Court of Kanawha County denying the motion for restoration of his custodial rights and requiring him to pay one-half of the children's guardian ad litem's fees. Respondent Jennilea M. ("Mother"), *pro se*, did not file a response. Respondents Gary S. and Carolyn S. ("Grandparents"), by counsel Kevin Hughart, filed a response. The guardian ad litem ("GAL"), D. Randall Clarke, filed a response on behalf of the children, M.M. and L.M. Petitioner filed a separate reply to each response.

The Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. This case satisfies the "limited circumstances" requirement of Rule 21(d) of the Rules of Appellate Procedure and is appropriate for a memorandum decision rather than an opinion. For the reasons expressed below, the decision of the family court is affirmed, in part, and reversed, in part, and this case is remanded to the family court for a determination as to whether a non-indigent party should be required to pay the remainder of the GAL's fees, or whether the GAL should be paid by this Court, pursuant to West Virginia Trial Court Rule 21.05.

While Mother previously filed a petition for divorce in the Family Court of Kanawha County, Mother and Father have since reconciled and are living together in South Carolina. Earlier in the proceedings, the family court awarded custody of Mother and Father's minor children—M.M. and L.M.[2]—to Mother's stepfather and mother, the Grandparents.[3]

---

[1] Because this case involves sensitive facts, we protect the identities of those involved by using the parties' first names and last initials, and identify the children by using their initials only. *See State ex rel. W.Va. Dept. of Human Servs. v. Cheryl M.*, 177 W.Va. 688, 689 n. 1, 356 S.E.2d 181, 182 n. 1 (1987).

[2] M.M. was born on March 16, 2006, and L.M. was born on January 17, 2008.

1

The family court first awarded legal custody of the children to the Grandparents following Mother's arrest on misdemeanor charges of (first offense) driving under the influence and possession of drugs on September 3, 2012. According to the criminal complaint, Mother admitted to smoking marijuana and taking pills. M.M. and L.M. were in Mother's vehicle at the time of her arrest. The children were not restrained by either car seats or seat belts. At an October 10, 2012, emergency hearing, Mother admitted to being arrested on September 3, 2012, and further testified that on another occasion, the children witnessed her fighting with her boyfriend[4] following a visit to the boyfriend's residence to smoke pot. According to M.M. and L.M., Mother left them alone in the car while she went inside and they were "scared for their safety." However, Mother testified that she took the children inside the residence with her and that they slept on an air mattress while she smoked marijuana with her boyfriend in his bedroom. Mother testified that it was in the children's best interests to remain in the Grandparents' care. During his testimony, Father admitted that both he and his wife "had problems with marijuana in the past." Father testified that he smoked pot with Mother on September 24, 2012, when she visited him in South Carolina. While stating that he could "quit anytime," Father admitted that he had smoked marijuana when the children were in the home. Father testified that Mother had been treated multiple times for using cocaine and taking pills at various hospitals and rehabilitation centers.

The Grandparents already had physical custody of M.M. and L.M. at the time of the October 10, 2012, hearing.[5] At the hearing, the GAL appointed to represent the children's interests presented the testimony of Timothy Saar, Ph.D. Based on his interview with the children, Dr. Saar found that the children had an emotional bond with the Grandparents and that the Grandparents had played a substantial role in caring for the children. Dr. Saar also found that Mother had exposed the children to emotional and physical harm. Dr. Saar concluded that removing M.M. and L.M. from the Grandparents' care would not be in their best interests. The family court awarded legal custody of the children to the Grandparents. The family court required Mother to undergo (1) random drug testing; (2) substance abuse counseling; and (3) a parental fitness evaluation. Mother was ordered to provide the family court with "written verification" of the completion of counseling and a parental fitness evaluation. The family court further ordered that if Father failed his October 10, 2012, drug test, he must comply with the same requirements as Mother. (Both Mother and Father tested positive for marijuana on their October 10, 2012, drug screens.) Finally, the family court ordered that Mother and Father have visitation at the discretion of and supervised by the Grandparents.

Following a hearing on January 17, 2013, the family court reaffirmed its November 29,

---

[3] The Grandparents also have permanent legal custody of Mother's child from a previous relationship pursuant to a custody agreement signed on October 25, 2012, in Case No. 11-D-1286.

[4] This incident occurred when Mother and Father were separated.

[5] At the time of her September 3, 2012, arrest, Mother and the children were residing with the Grandparents.

2

2012, order that the Grandparents should have legal custody of M.M. and L.M. At this hearing, Mother and Father testified that they had reconciled and requested the return of the children to their custody. However, the children's GAL objected to the custody request because the parents had failed their October 10, 2012, drug tests and were noncompliant with the conditions set forth in the November 29, 2012, order. The family court determined that "the evidence presented by [Mother] fails to prove that she has complete[d] a program of substance abuse counseling and a parental fitness evaluation." With regard to Father, the family court found, as follows:

> The Court finds the evidence presented by [Father] indicates he completed a one (1) week substance abuse program, but has only a partial record from Highland Hospital which is unauthenticated. The Court needs to review all records and drug screens to determine if [Father] has fully complied with its prior Order. The Court finds that the evidence presented by [Father] fails to prove that he has completed a parental fitness evaluation for review by the Court.

(emphasis in original). Accordingly, the family court denied Mother and Father's request to have the children returned to them. The family court ordered that each parent could re-petition for custody of M.M. and L.M. provided that "he/she has fully complied with the Court's directives to them in its [November 29, 2012, order] and addressed his/her substance abuse and parental fitness issues." The family court memorialized its rulings from the January 17, 2013, hearing in an order entered on March 6, 2013. Also in its March 6, 2013, order, the family court granted the GAL's motion to be paid his fees.

On July 15, 2014, Father filed a motion for restoration of his custodial rights to M.M. and L.M. Father noted that he had undergone a parental fitness evaluation and indicated a willingness to cooperate with "many," but not all, of the recommendations of the evaluator. Father's parental fitness evaluation was performed on April 28, 2014, by licensed psychologist Clifton R. Hudson. Dr. Hudson diagnosed Father with a history of both Cannabis and cocaine dependence and noted the presence of antisocial traits. Dr. Hudson noted that "[Father] has made a deliberate choice to maintain his professed indigency rather than pursuing gainful full-time employment in support of his family" and recommended that both Father and Mother "demonstrate their capacity to maintain appropriate employment prior to any movement toward reunification with the children." Dr. Hudson's other recommendations for Father included the following: (1) intensive outpatient substance abuse treatment; (2) continued drug screening with any missed or tampered with tests being treated as a failed test; (3) at least weekly individual therapy to address issues of personality or interpersonal relationships, including relationships with Mother and the children; and (4) prioritization of the best interests of the children over other considerations, including compliance with the family court's requirements. Dr. Hudson concluded that if Father does not prioritize the children's best interests and does not comply with the family court's requirements, the prognosis for Father's ability to parent in a minimally adequate way would continue to be "guarded."

Mother also underwent a parental fitness evaluation on April 28, 2014, which was performed by licensed psychologist Jennifer Mills Price. Dr. Price diagnosed Mother with a major depressive disorder and cannabis dependence. Dr. Price noted her concern that "[Mother] may be using Ativan as a substitute for marijuana." Dr. Price's recommendations for Mother included the

3

following: (1) intensive outpatient substance abuse treatment; (2) continued drug screening with random pill counts; (3) at least weekly individual therapy to address issues of personality or interpersonal relationships, including relationships with Father and the children; (4) pharmacotherapy for depression, but that prescription of benzodiazepines is contraindicated because of Mother's history of substance abuse; and (5) compliance with all court orders. Dr. Price concluded that at the time of the evaluation, the prognosis for Mother's ability to parent in a minimally adequate way was "guarded to poor."

In a report signed on September 3, 2014, M.M. and L.M.'s GAL recommended that Father and Mother be required to complete all of Dr. Clifton and Dr. Price's recommendations "prior to the [family court] considering [Father's] request for a modification of custody." The GAL also reported that on June 13, 2014, Mother was arrested for misdemeanor child endangerment, possession of narcotics, and an expired inspection sticker in DuPont City, West Virginia, at 1:30 a.m. while in the Grandparents' motor vehicle[6] with her oldest child (who was picked up by her grandmother).[7] According to the criminal complaint, "[Mother] . . . provided the officer with a bent spoon with a small piece of cotton and a hypodermic needle 'loaded' with a clear liquid." Upon the police officer's inquiry, Mother responded that the liquid was Roxicodone. The officer further stated that soon after he placed Mother in the police cruiser, she passed out.

A hearing on Father's motion for restoration of his custodial rights was held on September 4, 2014. Father submitted three drug screens dated January 13, 2014, July 23, 2014, and September 2, 2014, showing that he was negative for drugs on the dates of those tests. Father testified that he was free of drugs and is no longer using marijuana. Father was working as a golf caddy on Kiawah Island, South Carolina. Father testified that during the summer season, he works fifty hours a week and that during the less busy winter season, he may work maintenance at the golf course. Father also indicated that appropriate schools and daycare facilities exist in North Charleston, South Carolina, where he and Mother live and that he would be able to transport the children. Father testified that if he regained custody, he would not allow Mother to be unsupervised with M.M. and L.M. and would not permit drug use in the home. Father understood that Mother would always be an addict, but testified that she was seeking appropriate drug rehabilitation and mental health care in South Carolina. Father believed that he could protect the children from Mother's drug use more effectively than the Grandparents.

The family court denied Father's motion for restoration of his custodial rights, finding that it was "not the best interests of the children." The family court noted that Dr. Clifton and Dr. Price had opined a prognosis of either "guarded" or "poor" as to Father and Mother's potential to adequately parent M.M. and L.M. and that neither Father nor Mother "has completed a program of substance abuse treatment as previously order by the Court." Also, in its October 17, 2014, order, the family court noted that Father had not paid his half of the children's GAL's fees.[8] The family

---

[6] At the time of her June 13, 2014, arrest, Mother was residing with the Grandparents.

[7] *See* fn. 3 *supra.*

[8] The other half of the GAL's fees were taxed to Mother as the party who initiated this

court ordered that Father and the GAL negotiate a payment plan and, if no payment plan was agreed to, authorized the GAL to file a petition to hold Father in contempt of court. The family court did not address—and the parties did not raise[9]—the circuit clerk's approval of Father's application for waiver of fees and costs as an indigent person on January 25, 2013. Father appealed the family court's October 17, 2014, order, to the Circuit Court of Kanawha County on November 14, 2014. Subsequent to the filing of Father's appeal to the circuit court, the family court set the share of the GAL's fees to be paid by Father at $3,250 by an order entered November 25, 2014.

On December 3, 2014, the circuit court denied Father's appeal in an two-page order. When Father appealed the circuit court's December 3, 2014, order, Father filed an application for waiver of fees and costs for purposes of his appeal. The circuit clerk approved Father's more recent waiver application on December 11, 2014, which was acknowledged by this Court in its scheduling order entered on January 14, 2015.

Father now appeals to this Court. We review the matter under the following standard:

> In reviewing a final order entered by a circuit court judge upon a review of, or upon a refusal to review, a final order of a family court judge, we review the findings of fact made by the family court judge under the clearly erroneous standard, and the application of law to the facts under an abuse of discretion standard. We review questions of law *de novo*.

Syl., *Carr v. Hancock*, 216 W.Va. 474, 475, 607 S.E.2d 803, 804 (2004).

<u>Family court did not abuse its discretion
in denying Father's motion for restoration of custodial rights.</u>

Father argues that he should regain the custody of the children, M.M. and L.M. "Although parents have substantial rights that must be protected, the primary goal . . . in all family law matters . . . must be the health and welfare of the children." Syl. Pt. 3, *In re Katie S.*, 198 W.Va. 79, 82, 479 S.E.2d 589, 592 (1996); *see also Michael K.T. v. Tina L. T.*, 182 W.Va. 399, 405, 387 S.E.2d 866, 872 (1989) ("[T]he best interests of the child is the polar star by which decisions must be made which affect children.").

While only Father filed a motion for restoration of custodial rights, Father and Mother are reconciled and living together. Even assuming *arguendo* that Father is now drug free—which is a finding Father requested, but the family court refused to make—Father's home would still be unsafe because of the presence of Mother whose addiction problem is more persistent. Thus, we

---

case. Mother's half of the fees were paid by the Grandparents.

[9] No party submitted recordings of any hearing in the instant case as part of the record on appeal. However, by an order entered on August 13, 2015, this Court, on its motion, supplemented the record with the recording of the September 4, 2014, hearing, which has been reviewed.

find that Mother's ability to parent the children is also relevant. Shortly before the September 4, 2014, hearing, on Father's motion, Mother was arrested on June 13, 2014, with Mother's oldest child present in her vehicle.[10] Earlier in the proceedings, Mother was arrested on September 3, 2012, on misdemeanor charges of (first offense) driving under the influence and possession of drugs. The children involved in the instant case—M.M. and L.M.—were in Mother's vehicle at the time of her September of 2012 arrest. The children were not restrained by either car seats or seat belts.

While Father asserts that he would be able to protect the children from Mother's drug use more effectively than the Grandparents, we determine that Father has not shown that he would be able to protect the children from Mother's addiction. First, Father smoked pot with Mother in his home less than a month after Mother's September 3, 2012, arrest. Second, Father admitted that he had also smoked marijuana when the children were in his home. Third, Father has been diagnosed with a history of both Cannabis and *cocaine* dependence.[11]

Father's primary argument is that he has fulfilled the requirements the family court set forth for Father to regain custody of his children.[12] The family court found to the contrary. The family court determined that Father "has [not] completed a program of substance abuse treatment as previously order by the Court." The family court also noted that while Father has undergone a parental fitness evaluation, Dr. Clifton opined that the prognosis for Father's ability to parent in a minimally adequate way would continue to be "guarded." Therefore, we conclude that the family

---

[10] Mother was found with a needle containing Roxicodone and was charged with both misdemeanor child endangerment and possession of narcotics.

[11] Father did not dispute that Dr. Clifton diagnosed him with a history of both Cannabis and cocaine dependence at the September 4, 2013, hearing. Rather, Father's counsel stated only that Father disagreed with Dr. Clifton about the extent of his drug history.

[12] Father also argues that the children's GAL had a conflict of interest. The family court considered Father's motion to disqualify the GAL at a October 4, 2012, motions hearing. The GAL informed the family court that he had represented the Grandparents' son in a separate case wholly unrelated from the instant case and that no party from the instant case had been expected to be a witness in the separate case. The GAL stated that he did not learn any information that adversely affected any party in this case. Accordingly, in a November 13, 2012, order, the family court found that no conflict of interest existed and denied Father's motion. The family court also noted that Father did not file his motion until after the GAL filed a motion to restrict Mother's parenting time to supervised visitation. Father appears to argue that he believed that he could not appeal the family court's denial of his motion because it was contained in an order that was not final as to all issues addressed. Nonetheless, we need not address whether Father has timely raised the GAL's alleged conflict of interest because we find that the GAL's recommendation did not form the basis for the family court's denial of Father's motion for restoration of his custodial rights. The family court refused to restore Father's custodial rights because the family court determined that Father did not fulfill the requirements the court set forth for him to regain custody, which constitutes an sufficient, independent basis for the court's denial of Father's motion.

court did not abuse its discretion in refusing to restore Father's custodial rights, as such a restoration was not in the best interests of the children.

### Family court erred in requiring Father to pay one-half of GAL's fees.

While Father's application for waiver of fees and costs as an indigent person was approved by the circuit clerk on January 25, 2013, the GAL argues that the family court never found Father to be indigent. Pursuant to *State ex rel. Bay v. Marshall*, 227 W.Va. 679, 683-84, 714 S.E.2d 331, 335-36 (2011), a court has the authority to review the circuit clerk's approval of indigency status and require a new waiver application if information becomes available indicating that the indigent person has previously undisclosed assets. Similarly, an indigent person has an obligation to file a subsequent application if his financial means increase. *Id.* Father has consistently maintained that he is indigent. The record on appeal reflects that neither the GAL nor the Grandparents made a request to the family court to require a subsequent wavier application based on newly discovered information. Based on Father's disclosed financial information, the Grandparents allege that Father must be hiding income from tax authorities because his reported income is far exceeded by his expenses. However, Father denies the Grandparents' allegations. In addition, the circuit court approved a more recent waiver application filed by Father for purposes of appeal on December 11, 2014. Therefore, we find that Father qualifies as an indigent person.

West Virginia Trial Court Rule 21.05 provides, in pertinent part, that "in a domestic relations case the cost of . . . a [GAL] for an infant of the parties may be ordered to be paid by a non-indigent party or the Supreme Court regardless if one or both parties are indigent." The record on appeal reflects that Mother is unemployed—but has not yet been approved for a waiver of fees and costs—and that the Grandparents are financially solvent.[13] Therefore, we reverse the family court's ruling that the indigent Father pay one-half of the children's GAL's fees and remand the case to the family court for a determination as to whether a non-indigent party should be required to pay the remainder of the GAL's fees, or whether the GAL should be paid by this Court, pursuant to West Virginia Trial Court Rule 21.05.

For the foregoing reasons, we reverse the circuit court's December 3, 2014, order that denied Father's appeal from the family court's October 17, 2014, order. With regard to the October 17, 2014, order, we (1) affirm the family court's denial of Father's motion for a restoration of his custodial rights; and (2) reverse the family court's ruling that the indigent Father pay one-half of the children's GAL's fees and remand the case to the family court for a determination as to whether a non-indigent party should be required to pay the remainder of the GAL's fees, or whether the GAL should be paid by this Court, pursuant to West Virginia Trial Court Rule 21.05.

Affirmed, in part, Reversed, in part, and
Remanded with Directions.

---

[13] *See* fn. 8 *supra.*

**ISSUED**: September 11, 2015

**CONCURRED IN BY**:

Chief Justice Margaret L. Workman
Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Menis E. Ketchum
Justice Allen H. Loughry II