# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**FILED**

**June 17, 2019**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**Maurice Dosso,**
**Plaintiff Below, Petitioner**

**vs)  No. 17-0664** (Berkeley County 16-C-90)

**Farmers and Mechanics Insurance**
**Companies, a West Virginia Corporation,**
**Foster Sirbaugh, and Lauren Voglesong,**
**Defendants Below, Respondents**

## MEMORANDUM DECISION

Petitioner Maurice Dosso, pro se, appeals two orders of the Circuit Court of Berkeley County. In a June 29, 2017, order, the circuit court awarded summary judgment to Respondents Farmers and Mechanics Insurance Companies, Foster Sirbaugh, and Lauren Voglesong (collectively "respondent") in petitioner's civil action alleging breach of an insurance contract, bad faith, and intentional and negligent infliction of emotional distress.[1] In an earlier order, entered May 1, 2017, the circuit court adopted, inter alia, a discovery commissioner's recommendation that one-half of the commissioner's fees and costs be borne by petitioner, an indigent party. Respondent, by counsel Susan R. Snowden, filed a response in support of the circuit court's orders.

The Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. This case satisfies the "limited circumstances" requirement of Rule 21(d) of the Rules of Appellate Procedure and is appropriate for a memorandum decision rather than an opinion. For the reasons expressed below, the decision of the circuit court is affirmed, in part, reversed, in part, and this case is remanded to the circuit court with directions to vacate that portion of its May 1, 2017, order adopting the discovery commissioner's recommendation that one-half of the commissioner's fees and costs be borne by petitioner.

For the period from October 6, 2014, to October 5, 2015, petitioner insured a 2000 Ford Expedition with respondent. On December 22, 2014, petitioner reported a loss to respondent. According to petitioner, water leaked into his vehicle and damaged the computer and electrical

---

[1]Respondent Sirbaugh serves as the chief executive officer at the respondent insurance company, and Respondent Vogelsong is the claims adjuster who handled petitioner's claim.

1

systems, causing it not to start. Petitioner claimed that respondent was financially responsible for the loss under the "other than collision" coverage set forth in his policy, which included losses from "[h]ail, water[,] or flood."

On December 31, 2014, respondent's appraiser inspected petitioner's vehicle. In a January 1, 2015, report, the appraiser opined that there was "nothing for us to appraise" because, based on the inspection of the vehicle, petitioner did not have a covered loss. The appraiser explained:

> Truck appears to have water leak at windshield, frt of roof pnl is rusting and may have deteriorated seal between roof and w/shld.
>
> [T]his is definitely a problem that has been present quite a while and has gotten worse over time, the w/shld has some silicone applied to top/left side (indicating a problem existed with a leak that the silicone tried to patch), which insd states he did not put there and was there when he purchased trk 6 yrs ago, insd states he did not have any problem with water leak until a couple weeks ago. [I]nsd has apt at ford dealer in [M]tsbg [J]an 8th to try and determine why truck wont start after rain/when water runs down w/shld and behind the dashboard? Vehicle started during my inspection, insd states it has dried out over the last week as it has not rained. I advised dealer may not be able to diagnose if problem does not exist when he takes it there and that dealer may need to remove dashboard to inspect components behind dash and the diagnosis attempt may cost several hundred dollars.

By letter dated January 7, 2015, respondent informed petitioner that his policy did not provide coverage for the leak and any resultant water damage[2] because of the wear-and-tear exclusion: "We will not pay for: . . . **2.** Damage due and confined to: **a.** Wear and tear; . . . **c.** Mechanical or electrical breakdown or failure[.]" (Emphasis in original.) However, to the extent that petitioner's vehicle's computer and electrical problems could be traced to a covered loss, respondent did not deny petitioner's claim. Rather, respondent reserved its right to deny the claim based on additional information and noted that "[t]he vehicle started during the [appraiser's] inspection."

Petitioner declined to proceed with the diagnostic examination that was scheduled for January 8, 2015. Given that the December 31, 2014, inspection did not reveal any covered loss, respondent informed petitioner in a January 13, 2015, email that it would not pay for the diagnostic examination "upfront," but that "[i]f what is discovered is covered[,] we will pay for it." By letter dated January 22, 2015, respondent confirmed to petitioner that a diagnostic examination was necessary to verify "the cause of [the] loss." Petitioner continued to refuse to take his vehicle to the dealer for a diagnostic examination. By letter dated February 16, 2015, respondent informed petitioner that, if he did not have a diagnostic examination performed on his vehicle within thirty days, the claim would be closed. Petitioner still failed to have a diagnostic examination performed. Consequently, by letter dated March 18, 2015, respondent informed petitioner that the claim"[was] considered closed."

---

[2]The parties agree that the carpeting inside petitioner's vehicle was saturated with water.

On February 19, 2016, petitioner filed a complaint against respondent alleging breach of an insurance contract, bad faith, and intentional and negligent infliction of emotional distress. With his complaint, petitioner filed an application for waiver of fees and costs as an indigent person, which was approved. On March 14, 2016, respondent filed an answer. On March 28, 2017, respondent filed a motion to bifurcate the contract claim from petitioner's other claims and to stay the other claims pending resolution of the contract claim. Following a response by petitioner, the circuit court granted respondent's motion by order entered April 29, 2016, finding that the contract claim's resolution may render the other claims "moot."

Thereafter, the parties engaged in discovery. By order entered February 9, 2017, the circuit court referred the parties' discovery dispute to a discovery commissioner. The circuit court directed that each party deposit $150 with the discovery commissioner who shall "dispers[e] the deposits in accordance with" a subsequent assessment of costs between the parties. By recommended order dated April 12, 2017, the discovery commissioner found that "the bulk of the outstanding discovery requests . . . by both [petitioner] and [respondent] relate to the counts of the [c]omplaint which have been bifurcated and stayed[.]" Accordingly, the discovery commissioner recommended that the circuit court rule on a December 9, 2016, motion by respondent to be awarded on summary judgment on the contract claim.[3]

The discovery commissioner further found that the parties' discovery dispute was "in good faith and could not be resolved without the necessity of intervention by the [c]ourt[.]" Therefore, the discovery commissioner recommended that each party pay one-half of his fees and costs in the amount of $947.77. By order entered May 1, 2017, the circuit court adopted the discovery commissioner's recommended order.

On June 29, 2017, the circuit court resolved the litigation between the parties by awarding respondent summary judgment on petitioner's claim for breach of their insurance contract.[4] The circuit court found:

> [Respondent's appraiser] did inspect the vehicle, finding that the damage that he observed was from wear and tear[.] . . . However, [respondent's appraiser] was unable to find any damage due to a "flood." It is undisputed that the subject vehicle started upon inspection by [respondent's appraiser]. [Respondent] paid for [the appraiser's] services, another fact that is undisputed by [petitioner]. [Petitioner] produced no evidence that a flood had occurred, nor was there evidence observable

---

[3]Petitioner filed a response to respondent's motion for summary judgment on January 31, 2017.

[4]The circuit court also awarded summary judgment to the individual respondents on the ground that they were not parties to the insurance contract. However, having determined that the circuit court properly awarded summary judgment because there was no contractual breach, *see infra*, we decline to address the court's alternate ground for awarding summary judgment to the individual respondents.

3

by [respondent's appraiser] that the vehicle had been in a flood. Rather, [respondent], after an inspection of the vehicle (paid for by [respondent]) informed [petitioner] to make a claim if the vehicle stopped working, or have a diagnostic and make a claim if the results would support such a claim. It is clear from the record that there is no evidence to support a finding that the vehicle was involved in a flood, or that it would not start. [Petitioner] has never provided any such documentation to [respondent].

The circuit court further found that respondent complied with the regulations of the West Virginia Insurance Commissioner set forth at W.Va. C.S.R.§§ 114-14-1 through -10 given that it (1) gave petitioner sufficient notice of its actions regarding his claim; and (2) provided petitioner what benefits were due him under the policy by sending an appraiser to inspect petitioner's vehicle and paying for that inspection. Petitioner now appeals both the circuit court's June 29, 2017, order awarding respondent summary judgment and its May 1, 2017, order adopting the discovery commissioner's recommendation that one-half of the commissioner's fees and costs be borne by petitioner.[5]

<u>The circuit court properly granted respondent summary judgment</u>
<u>in petitioner's action alleging breach of an insurance contract, bad faith, and intentional</u>
<u>and negligent infliction of emotion distress.</u>

As a preliminary matter, petitioner argues that the circuit court erred in bifurcating the contract claim from petitioner's other claims and staying the other claims pending resolution of the contract claim. "[A] circuit court has discretion when determining whether to bifurcate and stay proceedings in a first-party bad faith action against an insurer."[6] *State ex rel. Universal Underwriters Ins. Co. v. Wilson*, 239 W.Va. 338, 343 n.10, 801 S.E.2d 216, 221 n.10 (2017) (citing Syl. Pt. 2, *Light v. Allstate Ins. Co.*, 203 W.Va. 27, 506 S.E.2d 64 (1998)). Respondent argues that the circuit court did not abuse its discretion in granting respondent's motion to bifurcate and stay petitioner's other claims because, where the coverage issue may be dispositive, "it should ordinarily be decided first." *Christian v. Sizemore*, 181 W.Va. 628, 632-33, 383 S.E.2d 810, 814 (1989); *see also Wilson*, 239 W.Va. at 341 n.4, 801 S.E.2d at 219 n.4 (discussing *Christian*).

---

[5]In *Riffe v. Armstrong*, 197 W.Va. 626, 637, 477 S.E.2d 535, 546 (1996), *modified on other grounds*, *Moats v. Preston County Comm'n*, 206 W.Va. 8, 521 S.E.2d 180 (1999), we found that, "if an appeal is taken from what is indeed the last order disposing of the last of all claims as to the last of all parties, then the appeal brings with it all prior orders."

[6]"[A] first-party bad faith action is one wherein the insured sues his/her own insurer for failing to use good faith in settling a claim brought against the insured or a claim filed by the insured." *State of West Virginia ex rel. Allstate Ins. Co. v. Madden*, 215 W.Va. 705, 714 n.4, 601 S.E.2d 25, 34 n.4 (2004) (quoting *State ex rel. Allstate Insurance Co. v. Gaughan*, 203 W.Va. 358, 369, 508 S.E.2d 75, 86 (1998) (Footnote omitted.)).

As discussed below, we agree with the circuit court's finding that respondent complied with the regulations of the West Virginia Insurance Commissioner set forth at W.Va. C.S.R. §§ 114-14-1 through -10 given that respondent (1) gave petitioner sufficient notice of its actions regarding his claim; and (2) provided petitioner what benefits were due him under the policy by sending an appraiser to inspect petitioner's vehicle and paying for that inspection. Accordingly, based on our review of the record, we conclude that the circuit court did not abuse its discretion in bifurcating the contract claim from petitioner's other claims and staying the other claims pending resolution of the contract claim.

We now address the issue of whether the circuit court properly awarded summary judgment to respondent. "A circuit court's entry of summary judgment is reviewed *de novo*." Syl. Pt. 1, *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994). Rule 56(c) of the West Virginia Rules of Civil Procedure provides that summary judgment shall be granted where "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In syllabus point 4 of *Painter*, we held that "[s]ummary judgment is appropriate where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, such as where the nonmoving party has failed to make a sufficient showing on an essential element of the case that it has the burden to prove." 192 W.Va. at 190, 451 S.E.2d at 756.

"A claim for breach of contract requires proof of the formation of a contract, a breach of the terms of that contract, and resulting damages." *Sneberger v. Morrison*, 235 W.Va. 654, 669, 776 S.E.2d 156, 171 (2015) (citing Syl. Pt. 1, *State ex rel. Thornhill Group, Inc. v. King*, 233 W.Va. 564, 759 S.E.2d 795 (2014)). Here, there is no dispute that a contract of insurance existed between the parties. Given that the issue of damages is reached only if a breach has occurred, this case turns on whether respondent breached the terms of petitioner's insurance policy for his vehicle. However, petitioner makes a related argument that, in breaching the policy terms, respondent violated W.Va. C.S.R. §§ 114-14-1 through -10, the purpose of which, in pertinent part, is "to establish certain minimum standards and methods of settlements of . . . first-party . . . [insurance] claims." W.Va. C.S.R. § 114-14-1.1.a.

Petitioner argues that his claim remains open because respondent never denied it.[7] We find that petitioner's argument is contradicted by the allegations set forth in his complaint in which he refers to the "decision to deny" or the "denial" of his claim four separate times. As explained by respondent, it denied the claim with regard to the leak and the resultant water damage based on the policy's wear-and-tear exclusion: "We will not pay for: . . . **2.** Damage due and confined to: **a.** Wear and tear; . . . **c.** Mechanical or electrical breakdown or failure[.]" (Emphasis in original.). However, to the extent that petitioner's vehicle's computer and electrical problems could be traced to a covered loss, respondent reserved its right to deny the claim based on additional information, noting that "[t]he vehicle started during the [appraiser's] inspection."

---

[7]W.Va. C.S.R. § 114-14-6.3 provides, in pertinent part, that "[w]ithin ten (10) working days of completing its investigation, the insurer shall deny the claim in writing . . . . "

Based on our review of the record, we concur with the circuit court's finding that respondent, "all the time, provid[ed] [petitioner] notice in writing of [its] actions."[8] Following the January 7, 2017, reservation of rights, respondent confirmed to petitioner, by letter dated January 22, 2015, that a diagnostic examination was necessary to verify "the cause of [the] loss." Nevertheless, petitioner continued to refuse to take his vehicle to the dealer for a diagnostic examination. By letter dated February 16, 2015, respondent informed petitioner that, if he did not have a diagnostic examination performed on his vehicle within thirty days, the claim would be closed. Petitioner still failed to have a diagnostic examination performed. Consequently, by letter dated March 18, 2015, respondent informed petitioner that the claim"[was] considered closed."

Petitioner argues that respondent had the obligation to have a diagnostic examination performed because it failed to investigate once he reported a loss.[9] However, as found by the circuit court, respondent hired an appraiser to inspect the vehicle and the appraiser found "that the damage that he observed was from wear and tear[.]" The appraiser reported to respondent that there was "nothing for us to appraise" because, based on the inspection of the vehicle, petitioner did not have a covered loss. The appraiser explained, in pertinent part:

> Truck appears to have water leak at windshield, *frt of roof pnl is rusting* and *may have deteriorated seal between roof and w/shld.*
>
> *[T]his is definitely a problem that has been present quite a while and has gotten worse over time, the w/shld has some silicone applied to top/left side (indicating a problem existed with a leak that the silicone tried to patch),* which insd states he did not put there and was there when he purchased trk 6 yrs ago, insd states he did not have any problem with water leak until a couple weeks ago. . . . *Vehicle started during my inspection[.]*

(Emphasis added.). Based on the appraiser's report, we concur with the circuit court's finding that the leak and the resultant water were not covered losses because of the wear-and-tear exclusion and that the alleged computer and electrical problems were not covered losses because the vehicle

---

[8]W.Va. C.S.R. § 114-14-7.5 provides:

If any element of a physical damage claim remains unresolved more than fifteen (15) working days from the date of receipt of proofs of loss by the insurer, the insurer shall provide the insured with a written explanation of the specific reasons for the delay in the claim settlement unless reasonable grounds exist to suspect fraud or arson. An updated letter of explanation shall be sent every thirty (30) calendar days thereafter until all elements of the claim are either honored or rejected.

[9]W.Va. C.S.R. § 114-14-7.6 provides that "[i] f an insurer requires that its insured obtain an estimate or estimates of vehicle damage, the reasonable charges, if any, of such estimates shall be borne by the insurer."

6

started during the December 31, 2014, inspection. While respondent left the claim opened until March 18, 2015, to allow petitioner to have a diagnostic examination performed if he so chose,[10] we agree with the circuit court's finding that "[i]t is clear from the record that there is no evidence to support a finding that the vehicle . . . would not start." Respondent notes that it is petitioner's duty under the policy to "[s]ubmit a proof of loss when required[.]" As found by the circuit court, "[petitioner] has never provided any such documentation to [respondent]."

Faced with the appraiser's report, petitioner argues that the appraiser engaged in speculation regarding the cause of the leak in his vehicle's windshield. Petitioner also alleges, without evidence, that the appraiser was not qualified to evaluate water damage to automobiles. Based on our review of the record, we find petitioner's arguments insufficient to defeat respondent's well-supported motion for summary judgment. In syllabus point three of *Williams v. Precision Coil, Inc.*, 194 W.Va. 52, 459 S.E.2d 329 (1995), we held, in pertinent part, that "[i]f the moving party makes a properly supported motion for summary judgment and can show by affirmative evidence that there is no genuine issue of a material fact, the burden of production shifts to the nonmoving party[.]" Because petitioner does not dispute that respondent's appraiser inspected the vehicle, we concur with the circuit court's finding that the appraiser *observed* what he concluded to be damage from wear and tear.[11] Therefore, based on our review of the record, we conclude that the circuit court did not err in awarding summary judgment to respondent.

<u>The circuit court erred in ordering petitioner, an indigent party,
to pay one-half of the discovery commissioner's fees and costs.</u>

Petitioner argues that he cannot be required to pay one-half of the discovery commissioner's fees and costs because his indigency status was approved. In syllabus point one of *State ex rel. Deblasio v. Jackson*, 227 W.Va. 206, 707 S.E.2d 33 (2011), we reiterated:

> "When a party files an affidavit in accordance with and by reason of [West Virginia Code §] 59-2-1, stating that he is pecuniarily unable to pay fees and costs, or counsel fees, the truth of the affidavit is not then to be questioned and the officer whose services may be demanded or required shall perform such services as are required by law, as if such fees for such services had been paid." Syllabus Point 2, *Mars v. Luff*, 155 W.Va. 651, 186 S.E.2d 768 (1972).

In *State ex rel. Bay v. Marshall*, 227 W.Va. 679, 683-84, 714 S.E.2d 331, 335-36 (2011), we found that a court has the authority to review the circuit clerk's approval of indigency status and require a new waiver application if information becomes available indicating that the indigent person has

---

[10] As previously noted, respondent informed petitioner that it would not pay for the diagnostic examination "upfront," but that "[i]f what is discovered is covered[,] we will pay for it."

[11] Finally, petitioner argues that the circuit court exhibited bias against him. We agree with respondent that this argument is wholly without merit.

previously undisclosed assets. Similarly, an indigent person has an obligation to file a subsequent application if his financial means increase. *Id.*

Here, the circuit clerk's office approved petitioner's application for waiver of fees and costs and the record reflects that neither the circuit court nor respondent had cause to inquire whether petitioner's financial means had increased during the proceedings below. Accordingly, by scheduling order entered August 21, 2017, this Court accepted the previously approved waiver application and allowed petitioner to proceed as an indigent person during this appeal.

Respondent argues that petitioner should still be required to pay one-half of the discovery commissioner's fees and costs because he did not cooperate during discovery. In *Deblasio*, we rejected a similar argument, finding that a circuit court may not require an indigent person to pay filing fees and costs "if the circuit court, *sua sponte*, believes that the tendered civil complaint is without merit or was being filed for a vexatious purpose." 227 W.Va. at 211, 707 S.E.2d at 38. In this case, the discovery commissioner addressed the parties' conduct during discovery. The discovery commissioner found *both* parties made discovery requests regarding the claims that had been stayed pending resolution of the contract claim and declined to attribute bad faith to either party. Therefore, based on our review of the record, we conclude that the circuit court erred in ordering that petitioner, an indigent party, pay one-half of the discovery commissioner's fees and costs. Accordingly, we reverse that portion of the circuit court's May 1, 2017, order requiring that one-half of the commissioner's fees and costs be borne by petitioner and remand this case with directions that the circuit court vacate that portion of that order.

For the foregoing reasons, we (1) affirm the circuit court's June 29, 2017, order awarding respondent summary judgment, (2) reverse that portion of the circuit court's May 1, 2017, order adopting the discovery commissioner's recommendation that one-half of the commissioner's fees and costs be borne by petitioner, and (3) remand this case to the circuit court with directions to vacate that portion of its May 1, 2017, order.

Affirmed,in part, Reversed, in part,
and Remanded with Directions.

**ISSUED**:   June 17, 2019

**CONCURRED IN BY**:

Chief Justice Elizabeth D. Walker
Justice Margaret L. Workman
Justice Tim Armstead
Justice Evan H. Jenkins
Justice John A. Hutchison

8